## MROZIK v. JOHNSTON, Warden.
### No. 10929.
Circuit Court of Appeals, Ninth Circuit.

March 16, 1945.

Writ of Certiorari Denied June 11, 1945.

See 65 S.Ct. 1555.

Edward R. Mrozik, in pro. per., for appellant.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan and Joseph Karesh, Asst. U. S. Attys., both of San Francisco, Cal., for appellee.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order denying appellant's petition for a writ of habeas corpus. Defendant pleaded guilty to an indictment charging him with entering the State Bank of Sargeant, Minnesota, having its deposits insured by the Federal Deposit Insurance Corporation, "with intent then and there * * * to commit larceny in said bank."

The indictment charged the offense in the language of § 588b(a) of Title 12 U.S.C.A. (50 Stat. 749), a statute covering the crime of felonious entry into a bank so insured.

Appellee relies on no more than our decision in Audett v. United States, 142 F.2d 739, 740, which appellee describes as sustaining an indictment in the same language as that here under attack. This is not a correct statement. "The Audett" indictment described the intended larceny as "to steal, take, and carry away money belonging to and in the custody of the State Bank * * *."

It is obvious that appellant's indictment covered a much wider field of larcenous intent than that in the Audett case. Here it would cover the intended larceny by a pickpocket who had followed the temptingly exposed silk handkerchief emerging from the pocket of a depositor just entering—that is of property in which the bank has no interest. The statute provides:

"Whoever, by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value *belonging to, or in the care, custody, control, management, or possession of, any bank;* or whoever shall enter or attempt to enter any bank, or any building used in whole or in part as a bank, *with intent to commit* in such bank or building, or part thereof, *so used, any felony or larceny,* shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $50 *belonging to, or in the care, custody, control, management, or possession of any bank,* shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $50 *belonging to, or in the care, custody, control, management, or possession of any bank,* shall be fined not more than $1,000 or imprisoned not more than one year, or both." (Emphasis supplied.)

It is to be noted that all the provisions preceding and following the entering with felonious intent clause create offenses against the property of the bank. The larceny of such bank property diminishes its assets available for the protection of its depositors who are insured by the Federal Government.

Hence, it is contended, that since the only interest of the United States is in its insurance liability, the phrase "with intent to commit in such bank or building, or

part thereof * * * any felony or larceny" means a larceny of like kind with that of the other clauses of the single paragraph creating the offenses which affect federal insurance. That is to say, the intended larceny must be of the property of the bank and not of some other person not insured by the government. It is suggested that it is not conceivable that Congress intended to create a maximum sentence of twenty years for a pickpocket.

An answer to this contention is that the omission of the property provisions from the entry clause of the statute indicates a purpose to cover all larcenously purposed entrants. With the likely exposure of the bank's moneys on the receiving and paying tellers' desk, any larcenously minded person, even a pickpocket, well may be deemed in the view of the Congress a dangerous person to have on the insured premises. Hence it is arguable that Congress intended the language of the statute, which is the language of the indictment, to cover such a person. The twenty years and $5,000 fine are maxima and, in the case of the pickpocket, the trial judge well could sentence him to but 30 days "imprisonment."

 Certainly the latter construction of the indictment is not irrational. It is not necessary, however, for us to determine these questions. We have held the portion of the statute here involved to be valid in Audett v. Johnston, supra. If the district court erred in choosing between the two constructions, it was an error of law which could have been presented on appeal. For the reasons set forth in In re Eckart, 166 U. S. 481, 17 S.Ct. 638, 41 L.Ed. 1085, a proceeding under the writ of habeas corpus cannot be substituted for the appeal, the Supreme Court stating at page 483, of 166 U.S. 481, at page 638 of 17 S.Ct.:

"The case is analogous in principle to that of a trial and conviction upon an indictment, the facts averred in which are asserted to be insufficient to constitute an offense against the statute claimed to have been violated. In this class of cases it has been held that a trial court possessing general jurisdiction of the class of offenses within which is embraced the crime sought to be set forth in the indictment is possessed of authority to determine the sufficiency of an indictment, and, in adjudging it to be valid and sufficient, acts within its jurisdiction, and a conviction and judgment thereunder cannot be questioned on habeas corpus, because of a lack of certainty or other defect in the statement in the indictment of the fact averred to constitute a crime."

The order refusing the writ was right, and is

Affirmed.