## BIGROW v. HIATT et al.

No. 196.

District Court, M. D. Pennsylvania.

March 11, 1947.

See also 69 F.Supp. 587.

William F. Bigrow, pro se.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa. (Major Thayer Chapman, of Washington, D.C., of counsel), for respondents.

FOLLMER, District Judge.

William F. Bigrow, a military prisoner at the United States Penitentiary, Lewis-burg, Pennsylvania; who has filed a petition for writ of habeas corpus, was convicted in a court-martial proceeding on two charges as follows:

"Charge I: Violation of the 93rd Article of War.

"Specification: In that Private William F. Bigrow, Company 'A', 35th Tank Battalion, did, in the vicinity of Vannes, France, on or about 9 August 1944, willfully, feloniously, and unlawfully kill Tec 5 Walter J. LaSavage, by shooting him in the neck with a machine gun.

"Charge II: Violation of the 75th Article of War.

"Specification: In that Private William F. Bigrow, Company 'A', 35th Tank Battalion, was at Caudin, France, on or about 9 August 1944, drunk on duty as cannoneer in a tank enroute between Caudin, France, and St. Ave, France, in the presence of the enemy."

The petition contains numerous allegations which petitioner seeks to show constitute a denial of due process. The first matter assigned by him as error is that, "The Specification does not allege *before* the enemy nor do the facts in the Record of trial bear this out." The petitioner's reference is to the specification under charge 2 which uses the words "in the presence of the enemy." Article of War 75 under which this charge is brought uses the words "before the enemy."[1] Petitioner therefore questions the sufficiency of this specification.

On a criminal charge in the civil courts habeas corpus may not be invoked to question the sufficiency of an indictment which on its face is within the jurisdiction of the court to which it is returned.[2] Such an attack on an indictment is available in instances where it charges no crime what-

---

[1] Article of War 75, 10 U.S.C.A. § 1547. "Any officer or soldier who, *before the enemy*, misbehaves himself, runs away, or shamefully abandons or delivers up or by any misconduct, disobedience, or neglect endangers the safety of any fort, post, camp, guard, or other command which it is his duty to defend, or speaks words * * * shall suffer death or such other punishment as a court-martial may direct." (Italics supplied.)

[2] Birtch v. Hunter, 10 Cir., 158 F.2d 134; Mrozik v. Johnston, 9 Cir., 148 F.2d 149; Redmon v. Squier, 9 Cir., 147 F.2d 605; United States Ex Rel. Potts v. Rabb, 3 Cir., 141 F.2d 45; Moore v. Aderhold, 10 Cir., 108 F.2d 729; Garrison v. Hudspeth, 10 Cir., 108 F.2d 733; Moses v. Hudspeth, 10 Cir., 129 F.2d 279, certiorari denied 317 U.S. 665, 63 S.Ct. 73, 87 L.Ed. 534.

soever[3] or where an indictment has been altered in substance[4]; however, not as to matters which in no wise prejudice the defendant.[5] An indictment is returned under oath by the grand jury and can only be superseded by an indictment of equal solemnity, while a criminal information being the official act of the United States Attorney and not being founded on the oath of a grand jury, may be amended in either form or substance.[6] Specifications in military procedure are more nearly analogous in their informality to criminal informations, so that where a person has been tried in a military court the civil courts will consider only whether the charge was within the jurisdiction of the military court, holding that the matter of setting up the offense is one of pleading rather than jurisdiction.[7] It will thus be seen that here we have three gradations of procedure, i.e., indictment, criminal information, and specifications in military procedure, the latter the least formal of all.

 Petitioner, in these proceedings, in attacking this specification stressed the failure to use the exact words "before the enemy." In determining whether any offense whatsoever within the jurisdiction of the court was charged it is unquestionably sufficient if the language is, according to the natural import of the words, fully descriptive of the offense,[8] and as stated by the Supreme Court in Re Yamashita, 327 U.S. 1, 17, 66 S.Ct. 340, 349: "Obviously charges of violations of the law of war triable before a military tribunal need not be stated with the precision of a common law indictment. * * *"

If any authority on this point is needed, the terms "before the enemy" and "in presence of the enemy" are treated as being synonymous both by the Manual for Courts-Martial[9] and by Winthrop in his treatise on military law.[10] There is therefore no merit whatsoever in the petitioner's position in relation thereto.

The petitioner further alleges (using his language) that the second "specification" contains two charges, "Specification of Charge 2 contains *two charges* (i.e.) *Drunk*

---

[3] Brock v. Hudspeth, 10 Cir., 111 F. 2d 447; Roberts v. Hunter, 10 Cir., 140 F.2d 38.

[4] Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849.

[5] United States v. Fawcett, 3 Cir., 115 F.2d 764, 132 A.L.R. 404; United States v. Empire Hat & Cap Mfg. Co., D.C.Pa., 47 F.Supp. 395.

[6] Armstrong v. United States, 9 Cir., 16 F.2d 62, certiorari denied 273 U.S. 766, 47 S.Ct. 571, 71 L.Ed. 881.

[7] Ex parte Dickey, D.C.Me., 204 F. 322.

[8] United States v. Achtner, 2 Cir., 144 F.2d 49; United States v. Kushner, 2 Cir., 135 F.2d 668, certiorari denied 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850, reh. den. 320 U.S. 808, 64 S.Ct. 32, 88 L.Ed. 448; United States v. Lewis, 7 Cir., 110 F.2d 460, certiorari denied 310 U.S. 634, 60 S.Ct. 1077, 1078, 84 L. Ed. 1404; Audett v. United States, 8 Cir., 132 F.2d 528; Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375, par. 28, certiorari denied Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199.

[9] Manual for Courts-Martial, United States Army, 1928 (corrected to April 20, 1943), page 156, states:

"Misbehavior is not confined to acts of cowardice. It is a general term, and as here used it renders culpable under the article any conduct by an officer or soldier not conformable to the standard of behavior before the enemy set by the history of our arms. * * *

" 'The enemy' imports any hostile body that our forces may be opposing, such as a rebellious mob, a band of renegades, or a tribe of Indians. Whether a person is 'before the enemy' is not a question of definite distance, but is one of tactical relation. * * *

"Under this clause may be charged any act of treason, cowardice, insubordination, or like conduct committed by an officer or soldier *in the presence of the enemy*." (Italics supplied.)

[10] Winthrop's Military Law and Precedents, 2d Ed., 1920 Reprint, page 623 (*964), "This term is defined by Samuel as—'in the face or presence of the enemy.' It is not necessary, however, that the enemy should be in sight. If he is confronting the army or in its neighborhood, though separated from it by a considerable distance, and the service upon which the party is engaged, or which he is especially ordered or properly required by his military obligation to perform, be one directed against the enemy, or resorted to in view of his movements, the misbehavior committed will be 'before the enemy' in the sense of the Article."

*on Duty,* article of war 85 and also 75 articles of war, [10 U.S.C.A. §§ 1557, 1547]."

■ The record shows that charge 2 covers a violation of the 75th Article of War. In military procedure the specification which follows the charge sets forth the acts or omissions of the accused claimed to constitute the offense named in the charge.[11]

■■ If a recital therein is not part of the offense, it is surplusage. Winthrop on this point says,[12] "But if left to form a part of a pleading or Charge, it cannot affect its legal validity, since utile per inutile non vitiatur." This is not a question of jurisdiction such as where no offense whatsoever has been charged. The charge here is definitely "misbehavior before the enemy." The Military Court had "jurisdiction to try that charge, and it is for the court having such jurisdiction to decide upon the validity and sufficiency of the pleadings necessary to bring that charge before the court."[13]

■ Furthermore, in considering such questions in a habeas corpus proceeding in the civil courts it must be remembered that technical niceties of civil pleadings cannot be made the test, but that military usage and procedure is an important factor and that all that is required is that the allegations of the charge tested by any reasonable standard adequately alleges a violation of the law of war and that the military tribunal had authority to try and decide the issue which it raised.[14] And in this connection the courts have taken cognizance of the fact that Courts-Martial are "often required by the exigencies of military service to act speedily and in the field."[15] As the Supreme Court has pointed out,[16] " * * * To those in the military or naval service of the United States the military law is due process. The decision, therefore, of a military tribunal acting within the scope of its lawful powers cannot be reviewed or set aside by the courts," and that [17] " * * * military tribunals are as necessary to secure subordination and discipline in the army as courts are to maintain law and order in civil life; and the experience of our government for now more than a century and a quarter, and of the English government for a century more, proves that a much more expeditious procedure is necessary in military than is thought tolerable in civil affairs. * * *"

■ Petitioner next seeks to attack the verdict on the basis of the trial court's interpretation of and weight given to certain evidence. It was for the trial court to decide whether it would believe or disbelieve certain testimony and to determine what weight it would give to any portion of the evidence.[18] Moreover, from a review of the Court-Martial Record this court entertains no doubt as to the guilt of this petitioner.

The petitioner next alleges (using his language), " * * * Failure of the court to present things that they deliberately suppressed or omitted evidence that would have been beneficial to me in my defense such as a complete omission of the 70th A. W. in that I was never charged until 5 minutes before trial, in that I did not know what I

11 Winthrop's Military Law and Precedents, 2d Ed., 1920 Reprint, page 132 (*188).

12 Winthrop's Military Law and Precedents, 2d Ed., 1920 Reprint, page 135 (*192).

13 United States v. Maney, C.C.Minn., 1894, 61 F. 140, 142; see also In re Yamashita, 327 U.S. 1, 17, 66 S.Ct. 340.

14 1899, 22 Op.Atty.Gen. 589.

15 Johnson v. Biddle, 8 Cir., 12 F.2d 366, 370.

16 Reaves v. Ainsworth, 219 U.S. 296, 304, 31 S.Ct. 230, 233, 55 L.Ed. 225.

17 Creary v. Weeks, 259 U.S. 336, 343, 42 S.Ct. 509, 510, 66 L.Ed. 973.

18 Supreme Court in Re Yamashita, 327 U.S. 1, 8, 66 S.Ct. 340, 344, "We also emphasized in Ex parte Quirin, [317 U.S. 1, 63 S.Ct. 2, 87 L.Ed. 3] as we do here, that on application for habeas corpus we are not concerned with the guilt or innocence of the petitioners. * * * The courts may inquire whether the detention complained of is within the authority of those detaining the petitioner. If the military tribunals have lawful authority to hear, decide and condemn, their action is not subject to judicial review merely because they have made a wrong decision on disputed facts. Correction of their errors of decision is not for the courts but for the military authorities which are alone authorized to review their decisions. * * *."

was charged with, in that I awaited trial 30 days never had the opportunities to question witnesses before trial and in that I had no idea of the charges against me until 5 minutes before court convened. Failure of the court to read from the manual the *charges* and *penalties* of these charges hurt the substantial rights of the accused * * *."

▇▇▇▇ Unquestionably the extent of the reading from the Manual and related precedents is, under the provisions of the military law, a matter of discretion with the trial court.[19] Moreover, the Courts-Martial record in the instant case shows that the petitioner quite clearly waived any such requirement.[20]

In the foregoing paragraph of the petition it is also alleged that he was not served with the charges until five minutes before trial. The complete Court-Martial record which was introduced in evidence by the respondent, as it relates to matters preliminary to trial, shows that the formal charges were served upon the accused the day before the trial but approximately 30 days had elapsed between the time of the offense and the trial, and that the accused was interviewed by the Staff Judge Advocate three weeks before trial, given an opportunity to have counsel of his own choosing and to make any request regarding his defense, which he refused to do.[21]

Article of War 70,[22] as supplemented by the Manual for Courts-Martial,[23] does not make the time of service of the formal charges an absolute jurisdictional pre-requisite. Both Article of War 70 and the Courts-Martial Manual in relation thereto leave no doubt that in time of war a failure to serve the form of charges upon the accused in strict conformity with Article of War 70 is to be considered a ground for

---

[19] Manual for Courts-Martial, United States Army, 1928 (Corrected to April 20, 1943), paragraph 75, subparagraph b, page 59, provides, " * * * After the pleas the trial judge advocate will, to the extent *required by the court*, read the parts of this manual or of authoritative military precedents (see 128) that are pertinent to the definition, proof, and defense of the offenses charged." (Italics supplied.)

[20] Court-Martial Record, page 4,

"Prosecution: The Prosecution has no readings from the Manual or legal publications at this time and inquires whether or not the defense or any member of the Court desires a reading?

"Defense: The Defense requires no reading.

"President: Apparently no readings are desired by the Court."

[21] Staff Judge Advocate's Review contains the following, "The charges herein were not served upon the accused until the day before trial, but thirty days elapsed between the time of the offense and the trial and the accused was given every opportunity to have counsel of his own choosing and to prepare any defense he might have had. He was interviewed by me more than three weeks before trial with a view of ascertaining his wishes regarding his defense and he has never made one request. He has a sullen and invert personality and is dangerous."

[22] Article of War 70, 10 U.S.C.A. § 1542, provides, " * * * When a person is held for trial by general court-martial the commanding officer will, within eight days after the accused is arrested or confined, if practicable, forward the charges to the officer exercising general court-martial jurisdiction and furnish the accused a copy of such charges. If the same be not practicable, he will report to superior authority the reasons for delay. The trial judge advocate will cause to be served upon the accused a copy of the charges upon which trial is to be had, and a failure so to serve such charges will be ground for a continuance unless the trial be had on the charges furnished the accused as hereinbefore provided. In time of peace no person shall, against his objection, be brought to trial before a general court-martial within a period of five days subsequent to the service of charges upon him."

[23] Manual for Courts-Martial, United States Army, 1928, (corrected to April 20, 1943), paragraph 52, b, page 41,

"A failure by the trial judge advocate to cause a copy of the charges to be served as required may be a ground for a continuance; and in time of peace no person shall, against his objection, be brought to trial before a general court-martial within a period of five days subsequent to the service of charges upon him.

"The refusal by a court to grant a continuance where a reasonable cause is shown will not nullify the proceedings, but may be good ground for directing a rehearing."

continuance only. This is particularly emphasized by the further provision that in time of peace the accused shall not, against his objection, be brought to trial within five days of the service of the formal charges.

 This is not, therefore, an absolutely jurisdictional pre-requisite but a matter for the trial court's consideration under the circumstances of any particular case upon prior request by the defendant. As to this, the Court-Martial record in the instant case shows that the President of the court, prior to the accused's entry of his plea to the general issue, inquired, "Does the accused have any special pleas or motions to offer," and the answer by the defense was, "the accused has none." Therefore, in this regard there was no deprivation of any constitutional right of the defendant and no denial of due process.

Primarily because of the further statements of the petitioner to the effect that the court deliberately omitted evidence that would have been beneficial to his defense and that he was given no opportunity to question witnesses before trial, a rule to show cause issued to permit the defendant to present any matters in relation thereto, although the said allegations are so vague and indefinite that this court might well have dismissed the same without hearing.

The pre-trial investigating officer's report, which is a part of the official Court-Martial record of the proceeding, gives in detail the steps of the preliminary investigation, includes the various statements of the witnesses, shows that the accused was fully informed of the nature of the charge against him during the course of the investigation, furnished with the names of the accuser and of the witness, and advised of his right to cross-examine all available witnesses and to present anything he might desire on his own behalf. It shows further that the substance of the expected testimony of the various witnesses was made known to the accused and that if any witnesses were not examined on behalf of the accused, or if any witnesses were not cross-examined by the accused, it was because the accused stated that he did not desire to cross-examine and did not furnish the names of such witnesses to be examined on his behalf,[24] and that this was the attitude of the defendant is corroborated by the statement of the Staff Judge Advocate to which we have already referred.[25]

The petitioner's testimony at the time of the hearing in habeas corpus as to what he meant by "deliberate suppression" consisted of broad general allegations that he had no chance to examine witnesses and no knowledge of the charges until five min-

---

[24] The report of Major Cole, pre-trial investigating officer, sets forth, inter alia,

"1. I have investigated the inclosed charges dated 12 August 1944 against Pvt. William F. Bigrow, 6700686, Co. 'A,' 35th Tank Battalion, APO 254, %PM New York, New York in accordance with the provisions of Article of War 70 and paragraph 35a, Manual for Courts Martial, 1928. At the outset of the investigation, I informed the accused of the nature of the charges alleged against him; of the names of the accuser and witnesses, so far as known to me, of the fact that the charges were about to be investigated; of his right to cross-examine all available witnesses against him and to present anything he may desire in his own behalf, either in defense or mitigation; of his right to have the investigating officer examine available witnesses requested by him; and that it was not necessary for him to make any statement with reference to the charges against him, but that if he did make one it might be used against him.

"2. In the presence of the accused, I have examined all available witnesses and documentary evidence and have reduced the material testimony given by each witness, under direct and cross-examination, to a statement embodying the substance of the testimony taken on both sides, which said statement is attached hereto as hereinafter indicated:

"Marked Exhibit 'A'.

"3. The substance of the expected testimony of the following named witnesses either in oral or written form was made known to the accused who stated he did not desire to cross-examine such witnesses and therefore the same were not called or examined in the presence of the accused.

 Capt Stanislaw Niec
 Lt John R. Logsdon
 S/Sgt Howard W. Edgecombe
 Cpl Lewis E. Minx
 Tec 5 John L. Cuddy."

[25] See Footnote 21

utes before trial, and further allegations that he had been denied the right to interrogate a Major Hunter.

The first two matters have already been discussed. The petitioner does not say the witnesses would have testified in his behalf; in fact, does not know to what facts Major Hunter could or would have testified, nor that any actual request for the interviewing of this witness was made. It is quite evident that petitioner's allegation is predicated not upon any demand for this witness prior to trial but upon an afterthought occurring while searching the record for reasons for a writ of habeas corpus. No demand was made during the Court-Martial trial for the production of Major Hunter as a witness. His name appears only once during the interrogation of Corporal Minx with reference to the weapon.[26] As a matter of fact, though not material, this would appear to have been an erroneous reference in the testimony by Corporal Minx. The testimony of John L. Cuddy, T/5,[27] refers to Lt. Logsdon as having been present with him and this is confirmed by the testimony of Lt. Logsdon,[28] neither one of whom mentioned Major Hunter.

The petitioner's testimony in the habeas corpus hearing shows his complaint is not that he had been deprived of a material witness but that because the prosecution did not call such witness, the petitioner had been denied the right to cross examine him, and he does not contend, nor show, that the witness would have been favorable to him nor even that such witness was available.[29]

After observing the defendant on the witness stand and considering his testimony in the most favorable light, this Court would be bound to find that the petitioner failed to sustain the burden of proof which rests upon him in connection with his allegations, but even more than this his contentions are inconsistent with, directly in conflict with, and contradictory of the record of the Court-Martial proceedings. And it is fundamental that while the record where silent may in proper instances be supplemented, it may not collaterally be contradicted or impugned.[30]

The petition for writ of habeas corpus is accordingly denied and the rule to show cause dismissed.

---

[26] Court-Martial record of trial, page 10,
"Q. What condition was it? A. T/5 Cuddy and Major Hunter examined it."

[27] Court-Martial record of trial, page 7.

[28] Court-Martial record of trial, page 12.

[29] Smith v. Squier, 9 Cir., 136 F.2d 536.

[30] Givens v. Zerbst, 255 U.S. 11, 41 S. Ct. 227, 65 L.Ed. 475; Hill v. United States ex rel. Wampler, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283; Smith v. Hiatt, D.C.M.D.Pa., 1944, 54 F.Supp. 481; Spann v. Zerbst, 5 Cir., 99 F.2d 336; Farnsworth v. Zerbst, 5 Cir., 98 F.2d 541; Riddle v. Dycho 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009.