**UNITED STATES of America ex rel. Andrew J. SCOTT**

v.

**Victor G. WALKER, Warden of the Louisiana State Penitentiary, Angola, Louisiana.**

Misc. No. 622.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

July 9, 1963.

Harris M. English, Baton Rouge, La., for petitioner.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Teddy W. Airhart, Jr., Asst. Atty. Gen., Scallan E. Walsh, Asst.

Atty. Gen., Thomas W. McFerrin, Sp. Counsel Office of Attorney General, Baton Rouge, La., Duncan Kemp, Dist. Atty. Parish of Livingston, La., William Dawkins, Asst. Dist. Atty. Parish of Livingston, La., for respondent.

WEST, District Judge.

Petitioner applied to this Court for the issuance of a writ of habeas corpus. He is presently incarcerated in Louisiana State Penitentiary, awaiting execution of the death sentence imposed by a state court of competent jurisdiction after having been found guilty by a jury of the crime of aggravated rape. This Court issued an order staying the execution of sentence pending completion of these proceedings. Thereafter, following the filing by respondents of a motion to dismiss, plaintiff was given time to file a memorandum of authorities or brief in opposition to said motion. After receipt of the brief in opposition, an order to show cause why a writ of habeas corpus should not issue as prayed for was issued, and a hearing held thereon. Following the hearing on the show cause order, the Court considered it necessary to grant petitioner an evidentiary hearing, limited to the question of alleged systematic exclusion or systematic inclusion of members of the Negro race from petit juries in the parish where complainant was tried and convicted. Such a hearing was held and some 210 pages of testimony was taken. Following this hearing, counsel for both sides requested time to file briefs in support of their respective positions, which briefs have now been filed and carefully considered. After due consideration, this Court concludes that the application of petitioner, Andrew J. Scott, for the issuance of a writ of habeas corpus, must be denied.

In his application for the issuance of the writ, petitioner sets forth several grounds upon which he contends the writ should issue, including (1) systematic exclusion or systematic token inclusion of Negroes from the petit jury; (2) systematic exclusion or token inclusion of Negroes from the grand jury; (3) improper and erroneous charge given by the trial judge to the jury in connection with responsive verdicts; (4) refusal of the trial court to allow counsel for petitioner, on hearing of a motion for a new trial, to introduce evidence concerning a criminal record of a prosecution witness; and (5) that the indictment was invalid because of an erroneous date shown thereon.

A study of the record in this case reveals beyond any question of doubt that all of the grounds enumerated, with the exception of the first one, are clearly without merit. All of these grounds were thoroughly covered by the Appellate Courts of the State of Louisiana, and this Court is satisfied from its own independent study of the record in this case that no prejudicial errors were committed as claimed in petitioner's alleged grounds. Numbers (2) through (5). Petitioner cannot seriously contend that there was systematic exclusion of Negroes from the grand jury which indicted him because both the prior record in this case and the testimony taken by this Court clearly refutes such a charge. As to the contention that the trial judge improperly charged the jury, we find no merit. That question was thoroughly explored by the Supreme Court for the State of Louisiana and I think properly disposed of. The Court not only found nothing wrong with the charge given, but found no prejudice resulting therefrom in any event. With this conclusion I thoroughly agree. In connection with the third ground of alleged error, petitioner complains that the trial judge did not permit him to introduce evidence, on a hearing for a new trial, assailing the credibility of a state witness, one Joe Sharp. The Supreme Court of Louisiana, as well as the trial judge, concluded that the testimony of Joe Sharp was at best merely corroborative and that testimony impeaching his statements would not have produced a different result even if it had been heard. It is not for this Court to pass upon the guilt or innocence of petitioner, but only to determine

whether or not his constitutional rights have been violated. United States ex rel. Fletcher v. Cavell, D.C., 183 F.Supp. 335; United States ex rel. Cobb v. Cavell, D.C., 161 F.Supp. 174, 258 F.2d 946. Clearly there is no merit to this contention of petitioner. As to ground Number (5), that for some technical reason, the indictment was invalid, there is likewise no merit. The State Courts of Louisiana passed upon the validity of the indictment and found it valid. The State Court found that the indictment did properly charge an offense within the jurisdiction of the court, and the person accused was properly within the jurisdiction of the court. The sufficiency of the indictment, therefore, is not open to collateral attack in this Court in habeas corpus proceedings. Blount v. Huff, 79 U.S.App.D.C. 204, 144 F.2d 21; Id., 323 U.S. 787, 65 S.Ct. 276, 89 L.Ed. 628; United States ex rel. Potts v. Rabb, 3 Cir., 141 F.2d 45; Id., 322 U.S. 727, 64 S.Ct. 943, 88 L.Ed. 1563; Goldsmith v. Sanford, 5 Cir., 132 F.2d 126; Id., 318 U.S. 762, 63 S.Ct. 560, 87 L.Ed. 1134; Bigrow v. Hiatt, D.C., 70 F.Supp. 826; Id., 3 Cir., 168 F.2d 992.

 The testimony taken by this Court in connection with the petitioner's claim of systematic exclusion or systematic token inclusion of Negroes on the petit jury lists for the Parish of Livingston, State of Louisiana, convinces this Court that no such systematic exclusion or systematic token inclusion was practiced by the officials of that Parish. It is not enough for petitioner to show that in fact no Negroes actually served on the petit juries of that Parish. There is no guaranteed right to have a jury composed of both white and Negro persons. The only constitutional requirement is that, in the selection of jurors, there must be no systematic exclusion of members of a particular race. Virginia v. Rives, 100 U.S. 313, 322, 25 L.Ed. 667. Petitioner in this case has attempted to show that the number of Negroes whose names were included in the general venire list was not proportionate to the number of Negro citizens as compared to

the number of white citizens who reside and vote in the Parish of Livingston. In this regard, the voter registration rolls were referred to in the testimony to show the number of registered white voters as compared with the number of registered Negro voters in that Parish. The evidence shows that the names of prospective jurors are taken primarily from the voter registration rolls. However, there is no legal requirement of proportional representation of all racial groups on every jury list. Systematic exclusion of a particular group or a particular class of people only is forbidden. Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 886; Akins v. State of Texas, 325 U.S. 398, 65 S. Ct. 1276, 89 L.Ed. 1692. Discrimination in the selection of juries is not to be presumed, but must be proved by the plaintiff as any other fact. The plaintiff must bear the burden of showing clearly that he has been denied the equal protection of the laws by intentional, arbitrary and systematic exclusion of Negroes from the jury panels from which the petit jury is ultimately chosen. Bailey v. Henslee, 8 Cir., 287 F.2d 936, cert. denied 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed. 2d 78; United States ex rel. Jackson v. Brady, D. C., 47 F.Supp. 362, affirmed 4 Cir., 133 F.2d 476, cert. denied 319 U.S. 746, 63 S.Ct. 1029, 87 L.Ed. 1702, rehearing denied 319 U.S. 784, 63 S.Ct. 1315, 87 L.Ed. 1727.

The hearing in this case revealed that in the Parish of Livingston, State of Louisiana, jurors are selected by a jury commission composed of five jury commissioners, together with the clerk of court, who serves as an ex-officio member of the jury commission. The ex-officio member of the jury commission does not select the names of prospective jurors. All prospective jurors are selected by the five regular members of the jury commission.

Petitioner called as witnesses two private investigators. Charles M. Middleton and Thomas W. Patterson, both of whom he had employed to investigate this

matter for him. He also called the clerk of court, Mr. Alsay Addison, Judge Fannie Burch, a former District Judge in Livingston Parish, William P. Perrin, a librarian for the State Department of Commerce and Industry. Eugene Lockhart, a 75 year old Negro resident of Livingston Parish, Rev. David Lockhart, a 72 year old Negro resident of Livingston Parish, and the petitioner, Andrew J. Scott. Respondents called three members of the Livingston Parish Jury Commission, Clifton R. Threeton, James S. Barnett, and Louis F. Harris, Jr. When this matter was heard, the Court limited the period of time during which the claim of systematic exclusion would be reviewed to the period 1953–1958, being the five year period immediately preceding the year in which the petitioner was tried and convicted. Mr. Middleton, the private investigator employed by counsel for petitioner, contributed very little to the testimony in this case, other than to point up the fact that he interviewed many people and arrived at the conclusion that, to the best of his knowledge, no Negroes had actually served on a petit jury during the trial of a criminal case in Livingston Parish. He did testify that his investigation showed that not only had Negroes' names been included in civil jury venire lists and grand jury venire lists, but that Negroes had actually served on civil juries and had also actually served on grand juries in Livingston Parish. Mr. Thomas Patterson, the private investigator who assisted Mr. Middleton, testified that he personally never knew of a Negro actually serving on a petit jury during the trial of a criminal case, but that his investigation showed no evidence of systematic exclusion of Negroes nor did it show a systematic inclusion of a token number of Negroes on the jury panels for Livingston Parish. Mr. Addison, the clerk of court, testified concerning the method used in selecting juries. His testimony shows that the voter registration rolls are used as a primary reference, but that the jury commissioners have the right to, and do frequently use other sources from which to get names of prospective jurors. The jury commissioners are supplied with a complete list of the registered voters, taken from the voter registration cards in the office of the registrar of voters. While the registration cards themselves do indicate whether the person named thereon is white or colored, nevertheless the typed list taken from these cards and furnished to the jury commissioners for their use in selecting jury panels does not contain any reference to the race or color of the persons listed thereon. The only way the jury commissioners would know whether or not a person whose name was contained thereon was white or colored would be from his own personal knowledge or acquaintanceship with the person involved. Mr. Addison further testified that he knew of his own knowledge that the names of Negroes have consistently been included on the petit jury venire list and that to his knowledge there has never been any method used for the systematic exclution of members of the colored race from petit juries in Livingston. However, his testimony did show that his examination of the 300 names contained on the general venire showed, as far as he could determine from his own personal knowledge, the name of only one Negro. He did not recognize the names of any Negroes on the regular venire list of 30 names or the tales list of 50 names from which the petit jury that convicted petitioner was drawn.

When Judge Burch was called as a witness, she testified that she had been a District Judge in the Parish of Livingston from 1954 through 1960, and that during this time she heard many criminal cases. She testified that during that time, to the best of her recollection, there had never been a Negro who actually served on a criminal jury during a trial of a case. She further testified that to the best of her recollection, she could not recall a Negro serving on a grand jury that she had empanelled, but there is no question whatsoever from the other testimony in this case that Negroes did, in fact, serve quite frequently on the grand juries in the Parish of Livingston.

Finally, in answer to a direct question by the Court, Judge Burch stated categorically that to her knowledge, there was never any systematic exclusion of Negroes from the jury panels in Livingston Parish, nor was there any systematic token inclusion of Negroes' names on its jury panels. She further testified that the system of choosing the jury venire in criminal cases is the same as in civil cases, and that both civil and criminal petit juries and grand juries are selected from the same lists and the names are all drawn out of the same box. Thus, it is obvious that if Negroes' names are included in civil jury venires and if they do, in fact, serve on civil juries and on grand juries, as is clearly established by all of the evidence in this case, their names are available and subject to being selected for petit jury service in criminal cases also.

The petitioner called as a witness Eugene Lockhart, 75 year old Negro resident of Livingston Parish, who testified that he had, in fact, been called and served on a grand jury in Livingston Parish, but that he had never served on a petit jury. Rev. David Lockhart, a 72 year old Negro resident of Livingston Parish, also testified that he, too, had been called and did serve on grand juries in Livingston Parish, but that he had not been called to serve on a petit jury.

Respondents then produced the testimony of three members of the jury commission of Livingston Parish. The first witness, Mr. Clifton R. Threeton, testified that he represented the Fourth and Ninth Wards of Livingston Parish, and that each jury commissioner was required to submit a certain number of names as prospective jurors from his area. He stated that he regularly submitted the names of colored persons to serve as jurors, and categorically denied that he had ever attempted to exclude a person from jury duty because of his race. He testified that while he did use the voter registration rolls primarily as a source of names for prospective jurors, that nevertheless, he did acquire names from other sources and did include names of persons personally known to him. He stated that the criteria which he generally used in selecting prospective jurors was to make sure that they were persons of good character and that they had not been convicted of crime. He insisted during his testimony that he did not differentiate between white and colored persons and that while he could not state the number of colored names that he had submitted from his area, that nevertheless, he did know that he regularly submitted the names of Negroes as prospective jurors.

The testimony of James S. Barnett was substantially the same as that of Mr. Threeton. Mr. Louis F. Harris, Jr. said he had submitted no names of Negroes because in his entire district there were only three Negroes, two of whom were women, and one of whom was too old to serve as a juror. All three jury commissioners were asked specifically by the Court whether or not they had ever received any instructions from the district attorney or from any other official of the Parish of Livingston to exclude the names of Negroes from jury lists and whether or not they knew of any discussions among officials, including themselves, designed to keep Negroes' names off the jury lists. They each swore, under oath, that they had never heard of any such instructions or discussions. They were further asked by the Court whether or not there was any system or plan or procedure of any kind that was used in Livingston Parish between 1953 and 1958 for the purpose of systematically excluding Negoes from jury lists and they all answered that they had never heard of any such system or plan. Their testimony was in no way impeached.

Thus, after hearing the evidence in this matter, and after my own independent examination of the entire record in this case, I must conclude that petitioner has failed to establish that his constitutional rights have been violated. Therefore his application for the issuance of a writ of habeas corpus must be denied and the order previously issued herein staying the execution of sentence will be recalled and set aside.