STATE OF CONNECTICUT *v.* FRANCIS C. SMITH

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued June 12—decided August 7, 1951

*James C. Shannon,* with whom was *Melvin M. Dichter,* for the appellant (defendant).

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (state).

INGLIS, J. The defendant was found guilty of murder in the first degree upon an indictment charging

him with wilful, deliberate and premeditated murder. Upon this appeal, he has assigned as error the denial of his motion to set aside the verdict, the sustaining of a demurrer to his challenge to the array of the panel, the denial of his motion for a mistrial, a claimed error in the charge and certain rulings on evidence.

In the early morning of Saturday, July 23, 1949, Grover S. Hart was shot and killed in the clubhouse of the Indian Harbor Yacht Club of Greenwich, where he was employed as a night watchman. The principal question in the case is whether the state proved beyond a reasonable doubt both that the defendant was implicated in the killing and that the murder was wilful, deliberate and premeditated. From the evidence, the jury might reasonably have found, among others, the following facts: The bullet which caused the death was discharged from a Smith and Wesson .22 caliber revolver. There were found on the premises, in the near neighborhood of the shooting, two other bullets and four cartridge cases marked XR. At least one of these bullets and the four cartridge cases had come from a .22 caliber Colt automatic pistol.

About half past one in the morning of Sunday, July 24, two New York state policemen discovered, parked at the Hollywood Cafe in Brewster, N. Y., a gray Cadillac automobile with New Jersey registration plates NN65A. There was a piece of rope tied to the handle of the trunk to hold it in place. When the car was first seen, one man was standing by the open left front door and another was seated on the right side of the front seat. The policemen left to get their own automobile and by the time they returned to the Cadillac both men had disappeared. There was found in the Cadillac a .22 caliber Colt automatic pistol with a clip of shells each bearing the marking XR. This pistol was the gun from which the four cartridge cases found at

the scene of the crime had been ejected. It was in a leather holster. There was also discovered in the car another leather holster. Both the Colt and its holster and the second holster had been stolen on July 9 from a home in New Canaan, and when stolen the second holster had contained a Smith and Wesson .22 caliber revolver. The Cadillac also contained a hat which was the property of the manager of the Indian Harbor Yacht Club, six neckties bearing the insignia of the yacht club, a memorandum made by an employee of the club, several small pieces of jewelry and two tie clasps, all of which had been removed from the Indian Harbor Yacht Club on the night of the killing. In the Cadillac was a white shirt bearing a laundry mark which indicated that it belonged to a man named Smith who lived in Noroton Heights, Darien. The defendant's parents resided there and at times he stayed with them. There was also a set of Connecticut motor vehicle registration plates marked SA661.

Shortly before the car was first noticed by the New York police, the defendant was at the bar inside the Hollywood Cafe drinking beer. The Cadillac car had been stolen from Frederick B. Freid of Stamford in June, 1949. At that time it bore Connecticut registration plates SS404. On several occasions during June and July the defendant was seen driving a gray Cadillac car which corresponded in description to the one found by the New York police in Brewster, even to the extent that a rope was tied so as to hold the trunk cover in place. At various times the car driven by the defendant bore Connecticut license plates SS404 and SL513. Registration plates Connecticut SL513 and Connecticut SA661, found in the car at Brewster, and New Jersey NN65A had all been stolen from a garage in Stamford.

The defendant was arrested on July 28. He was found concealed in the woods at the Wilton reservoir.

He gave the name of Frank C. Lynch, denying that his name was Smith, and claimed that he was a member of a camping party which was in the neighborhood. It developed that there was no truth to this claim. He had in his possession a bottle of hair dye.

On the trial the defendant took the stand on his own behalf. He denied all implication in the killing. He also denied that he had any connection with the Cadillac car found in Brewster and offered a rather weak alibi both for the time of the crime and for the time when the car was found. He did admit that he had been driving a Cadillac car during June and July, but claimed that it was a different model and belonged to a gambler by whom he was employed. He accounted for the fact that he had been hiding out from the police on the ground that he thought they were after him for violation of his parole from state prison. His answers to questions on cross-examination were evasive to such an extent that the jury might reasonably have found that he was not entitled to credit.

It is apparent that the state's case relating to the connection of the defendant with the killing and to proof of the premeditation of the killing rested exclusively on circumstantial evidence. It does not follow from that, however, that it was not a strong case. The law recognizes no distinction between circumstantial evidence and direct evidence so far as probative force is concerned. If evidence, whether direct or circumstantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction. *State* v. *Colonese,* 108 Conn. 454, 460, 143 A. 561; *State* v. *Rome,* 64 Conn. 329, 334, 30 A. 57. As has been said so often, proof beyond a reasonable doubt is such proof as precludes every reasonable hypothesis except that which it tends to support and is consistent with the defendant's guilt and inconsistent with any

other rational conclusion. The requirement that evidence must be such as satisfies beyond a reasonable doubt "does not mean that the proof must be beyond a possible doubt, and a possible supposition of innocence is a far different thing from a reasonable hypothesis." *State* v. *McDonough,* 129 Conn. 483, 485, 29 A. 2d 582; *State* v. *Santoro,* 128 Conn. 297, 299, 22 A. 2d 793; *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 A. 761; *State* v. *Block,* 87 Conn. 573, 577, 89 A. 167.

In the present case the presence in the Cadillac, as it stood at the Hollywood Cafe, of one of the guns which had been discharged at the scene of the killing and of the various articles which had been taken from the Indian Harbor Yacht Club warranted the inference, in the absence of any evidence to the contrary, that whoever was then in possession of the car had been one of those who did the killing. The fact that the accused was in the neighborhood when the Cadillac was found, that what was probably his shirt was in the car and that he had been driving the same car for several weeks before that time led irresistibly to the inference that it was he who was in possession of the car. It follows that this evidence, supported by the evidence of the guilty conduct of the defendant at the time of his arrest and other facts of lesser importance, was sufficient to justify the jury in finding that it had been established beyond a reasonable doubt that the defendant was one of the participants in the crime. See *State* v. *Litman,* 106 Conn. 345, 349, 350, 138 A. 132.

To warrant a conviction, there must be no reasonable doubt as to any essential element of the crime charged. *State* v. *Newman,* 127 Conn. 398, 400, 17 A. 2d 774. An essential element of the crime of murder in the first degree as charged in the indictment in this case was that the killing was wilful, deliberate and premeditated. The only reasonable inference from the fact that the

defendant in this case carried a deadly weapon with him when he was engaged in the commission of a theft was that he planned to kill anyone who interfered with him. That means that for an appreciable period of time before the shot was fired he premeditated a killing. *State* v. *Palko,* 121 Conn. 669, 676, 186 A. 657; *State* v. *Simborski,* 120 Conn. 624, 629, 182 A. 221. The evidence was adequate to justify the jury in concluding that it had been established beyond a reasonable doubt that the defendant was guilty of murder in the first degree.

When the trial of the case started, there were on the regular panel only thirty-four jurors. Seven of these had to be excused because they had already served the statutory period of four weeks. General Statutes, Sup. 1949, § 657a. There were no other names left on the jury list of the county for the court year. To complete the jury for the trial of this case, the court directed the sheriff to summon talesmen, and 115 talesmen were called. A total of 112 prospective jurors were examined on the voir dire before the selection of the 12 jurors and 2 alternate jurors was completed. Of those 112, 60 were men and 52 were women. The jury as selected were composed of five men and seven women, and the two alternates were women. In the selection the defense used twenty-eight of its thirty peremptory challenges.

Before the start of the trial the defendant challenged the array on the ground that there were not enough jurors left on the regular jury list for the court year to permit the obtaining of a jury to hear the case. A demurrer to this challenge to the array was sustained. A challenge to the array is proper only to state an objection to the panel as a whole on some ground that affects the entire panel. *State* v. *Hogan,* 67 Conn. 581, 583, 35 A. 508. It will be allowed only on some ground

which arises out of the proceedings in selecting and summoning the panel. *State* v. *Luria,* 100 Conn. 207, 209, 123 A. 378. The ground alleged in the defendant's challenge to the array was, therefore, insufficient, and the sustaining of the demurrer to it was not erroneous.

After the impaneling of the jury, the defendant moved for a mistrial on the same ground stated in his challenge to the array and on the added ground that the use of talesmen deprived him of the safeguards and information which he would have had if the veniremen had been called from the regular jury list. Neither of these grounds was well taken. It was well within the discretion of the trial court to start the trial with only twenty-seven jurors from the regular list available. A court may always, when there is "any cause" therefor, resort to the summoning of talesmen to fill out a jury. General Statutes § 7925. This is true even though there are persons left on the year's list who have not been called. In the present case, if talesmen could not have been resorted to, the trial would have had to be delayed for at least four months. The information to which the defendant referred in his motion was that which appears on the questionnaires returned to the jury commissioners, pursuant to § 7912 of the General Statutes, by each person whose name is on the jury list. These questionnaires, although primarily designed to aid the jury commissioners in the selection of qualified jurors, are filed in the clerk's office and are open to inspection by any litigant or his attorney. That such information was not readily at hand to the defendant in this case did not prejudice him. He was privileged, by examining each talesman on the voir dire, to elicit the same sort of information as would have appeared on the talesman's questionnaire if he had been on the regular jury list. The same objection could be made in any case in which talesmen are used, to the end that

the unquestioned power of the courts to summon talesmen would be of no avail. The denial of the motion for a mistrial was proper.

The complaint which the defendant makes to the charge is nothing more than that, in view of the fact that the charge discussed the evidence in extenso, it should have stated in greater detail the application of the principle that it was for the jury to decide the facts of the case. A reading of the charge discloses that the jury were explicitly instructed that it was their exclusive function to decide all questions of fact, that it was for them to pass upon the credibility of witnesses, that their recollection of the evidence would control and that it was in their province to determine what reasonable inferences were to be drawn from the facts which they found proven. The discussion of the case all through the charge was in such form that the principle that the jury were the sole judges of the facts was implicitly recognized and reflected. There is no merit to the defendant's claim of error in the charge.

The only other matter claimed by the defendant to be reversible error which merits consideration is a series of rulings admitting portions of the testimony of George Lowden, a witness called by the state. When Lowden was first called to the stand, he volunteered the statement that he did not wish to testify for either the defense or prosecution. After testifying that he had pleaded guilty to murder in the second degree in connection with the killing of Grover Hart, he was asked if he knew Frank Smith. Before he could answer the question, defendant's counsel suggested that Lowden be advised of his constitutional privilege. He was so advised by the court. Lowden then testified that he did know Smith and that he had seen him in July, 1949. He went on to testify that in the morning before taking the stand he had told the state's attorney that he

would testify and tell the truth. The jury were then excused and Lowden conferred with the public defender as to his right to refuse to testify as to matters which would tend to degrade or incriminate him. After the jury were recalled, the witness, when asked whether he and Smith had been together on the night of July 22, refused to answer. When asked the reason for his refusal, he said: "We will put it that it might incriminate Frank Smith and then I refuse to do so." This answer and several others of like tenor which were given in the further examination of Lowden were, upon motion of the defendant, later stricken and the jury were told to ignore them. Likewise some testimony of the same witness as to the contents of a statement given by him to the police was later stricken and the jury told to ignore it. The defendant also excepted to the court's ruling which permitted the state's attorney to cross-examine Lowden. It was clear that the state was taken by surprise by the witness' refusal to testify on important matters, and under the circumstances it was well within the discretion of the court to allow cross-examination. *State* v. *Gargano*, 99 Conn. 103, 113, 121 A. 657. That testimony of Lowden objected to by the defense which was allowed to stand was properly admitted.

There is no error.

In this opinion the other judges concurred.