FRANCIS C. SMITH *v.* STATE OF CONNECTICUT

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued October 8—decided November 10, 1952

*James C. Shannon,* with whom, on the brief, was *Melvin M. Dichter,* for the appellant (plaintiff).

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (state).

JENNINGS, J. The plaintiff was convicted of murder in the first degree and appealed. The facts are fully stated in the opinion in *State* v. *Smith,* 138 Conn. 196, 82 A.2d 816. They will be repeated here only in so far as is necessary to present the issue on this petition for a new trial.

In the early morning of July 23, 1949, Grover S. Hart was shot and killed. About half-past one in the morning of the next day two New York state policemen discovered a gray Cadillac car parked at the Hollywood Cafe in Brewster, New York. This car had been stolen in June, 1949. It was the one used in committing the crime. The plaintiff was in the Hollywood Cafe just before the car was discovered.

The state offered circumstantial evidence of the connection of the plaintiff with the murder. Included in this was testimony of Edith Springer that she knew the plaintiff and had seen him driving a gray Cadillac car and that at one time its registration number was the one which, according to other testimony, it bore when it was stolen in June, 1949. She also testified that on another occasion there were different number plates on the car and these were found in it at the Hollywood Cafe. At least two

other witnesses testified that they had seen Smith
driving a car of the same make and description.

The judgment in *State* v. *Smith* was entered June
27, 1950. The judgment was affirmed by this court
on appeal. On April 24, 1951, Miss Springer wrote
a judge of the Superior Court that her testimony
in the *Smith* case was false. Her deposition was
taken on December 12, 1951. She then denied having
ever seen Smith in a car, to say nothing of having
noted its registration. The petition for a new trial
is based on this deposition. A demurrer to the peti-
tion was overruled and the case was heard on the
merits. The trial court rendered judgment for the
defendant. The memorandum of decision may be
consulted to determine the basis of the judgment.
*Jacen* v. *East Hartford,* 133 Conn. 243, 245, 50 A.2d
61; *Clark* v. *Connecticut Co.,* 132 Conn. 400, 403, 44
A.2d 706; *In re Application of Dodd,* 132 Conn. 237,
242, 43 A.2d 224; Maltbie, Conn. App. Proc., p. 120.
The grounds of decision are there stated to be that
the plaintiff failed to prove (1) that the Springer
testimony on the trial was false, (2) that without it
the jury might have reached a different conclusion,
or (3) that the element of surprise, under the cir-
cumstances, entitled him to a new trial.

"Petitions for a new trial are addressed to the dis-
cretion of the trial court, and its action is not review-
able by this court unless the record shows an abuse
of discretion." *Burns* v. *State,* 84 Conn. 518, 521,
80 A. 712. "[Their] very foundation is that a judg-
ment technically valid is substantially unjust." Id.;
*Krooner* v. *State,* 137 Conn. 58, 62, 75 A.2d 51; *Wid-
man* v. *Kearns,* 96 Conn. 254, 264, 114 A. 77. A new
trial will not ordinarily be granted because of the
discovery of additional impeaching or discrediting
testimony. *Husted* v. *Mead,* 58 Conn. 55, 63, 19 A.

233; *Shields* v. *State,* 45 Conn. 266, 270; see *Pradlik* v. *State,* 131 Conn. 682, 685, 41 A.2d 906; *Parsons* v. *Platt,* 37 Conn. 563, 565. Where the case turns on the weight to be accorded new evidence and similar factual issues, this court has ordinarily refused to interfere. *Schoonmaker* v. *Albertson & Douglass Machine Co.,* 51 Conn. 387, 395; *Burns* v. *State,* supra. " 'It cannot be said that, as a matter of law, a new trial should be granted whenever an important witness against the defendant shall make an affidavit that he committed perjury in his testimony; if that were so, justice would be defeated in many grave cases . . . . We have no doubt that a case might arise where an important witness had afterwards testified to having committed perjury, in which case this court would hold, looking at the whole case, that a new trial ought to have been granted. [*People* v. *Tallmadge,* 114 Cal. 427, 430, 46 P. 282]. Bearing in mind that the witnesses to crimes of violence are often of a low and degraded character and that after they have given their testimony they are sometimes influenced by bribery and other improper considerations, it is evident that the establishment of a rule which left the power to grant a new trial to a defendant to depend upon recantation by such witnesses would be subversive of the proper administration of justice. I do not wish to be understood as urging that the fact of recantation is not to be considered by the court in weighing the testimony upon which the defendant was convicted, but I wish to make clear the fact that recantation in and of itself does not necessarily require the court to order a new trial . . . . There is no form of proof so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of criminal

law know well its untrustworthy character." *People v. Shilitano,* 218 N.Y. 161, 169, 112 N.E. 733.

If upon reading the testimony in *State* v. *Smith,* supra, in connection with the new testimony produced, no injustice is apparent and the newly discovered evidence is insufficient to render a different result upon a new trial probable, a new trial should not be granted. *Gannon* v. *State,* 75 Conn. 576, 583, 54 A. 199; *Gonirenki* v. *American Steel & Wire Co.,* 106 Conn. 1, 12, 137 A. 26.

These rules, applied to the facts of the case, fully support the judgment for the defendant. Edith Springer was definitely of the class referred to in the New York case quoted above. At the time of the murder she was on parole from a correctional institution. When she gave her deposition she was confined in the women's prison in Alabama, serving a three-year sentence for receiving stolen property. A warrant awaits her at her release to answer to a charge of robbery in Tampa. She admitted association with both Smith and Lowden. The latter pleaded guilty to second degree murder in the killing of Hart.

Her testimony on the trial was short, direct and to the point. Her deposition was evasive and the reasons given therein for changing her testimony were manifestly untrue. The trial court heard not only her deposition but the testimony of half a dozen witnesses relevant thereto. Far from finding an abuse of discretion in denying the petition, we are satisfied, after comparing the record of the case of *State* v. *Smith* with that in the case at bar, that we would reach the same result if we had to decide the case on the merits. That is not our province. As stated above, the issue before us is whether the trial court abused its discretion. We find that it did not.

There is no error.

In this opinion the other judges concurred.