UNITED STATES ex rel. Frank C. SMITH, Petitioner,

v.

Frederick G. REINCKE, Warden, Connecticut State Prison, Somers, Connecticut, Respondent.

Civ. No. 10712.

United States District Court
D. Connecticut.
March 22, 1965.

Paul W. Orth, Hoppin, Carey & Powell, Hartford, Conn., for petitioner.

John F. McGowan, Asst. State's Atty., Bridgeport, Conn., for respondent.

ZAMPANO, District Judge.

The petitioner, presently incarcerated in the Connecticut State Prison, has filed a petition for writ of habeas corpus, alleging violations of federal constitutional rights secured and guaranteed to him by the Fourteenth Amendment of the Constitution of the United States. Jurisdiction is founded upon 28 U.S.C. §§ 2241 and 2251. This Court granted him leave to proceed in forma pauperis and appointed Attorney Paul W. Orth of Hartford, Connecticut to represent him. Hearings on the petition were held on January 14, 1965 and January 21, 1965.

After a trial by jury the petitioner was convicted of first degree murder and, on June 7, 1950, was sentenced to punishment of death. The verdict and sentence were affirmed on appeal, State v. Smith, 138 Conn. 196, 82 A.2d 816 (1951). Thereafter two petitions for a new trial resulted in judgments for the State. Smith v. State, 139 Conn. 249, 93 A.2d 296 (1952); Smith v. State, 141 Conn. 202, 104 A.2d 761 (1954). Petitioner's sentence of death has since been commuted to life imprisonment, which term he is now serving.

From the record it appears the jury could reasonably have found the following facts: On Saturday, July 23, 1949, in the early morning hours, Grover S. Hart, night watchman at the Indian Harbor Yacht Club of Greenwich, Connecticut, was shot and killed. The bullet which caused his death was fired from a Smith and Wesson .22 caliber revolver. There were found on the premises two other bullets at least one of which was .22 caliber, and four cartridge cases marked "XR".

The following day two New York state policemen discovered a gray Cadillac automobile parked at the Hollywood Cafe in Brewster, New York. There was found in the automobile a .22 caliber Colt automatic pistol in a leather holster with a clip of shells each bearing the marking "XR". This pistol was the gun from which the four cartridge cases found at the scene of the killing had been ejected. There was also discovered in the car another leather holster, which, along with the other gun and holster, had been stolen from a home in New Canaan, Connecticut. When stolen, the second holster had contained a Smith and Wesson .22 caliber revolver.

The Cadillac also contained a hat which was the property of the manager of the Indian Harbor Yacht Club, six neckties bearing the insignia of the club, several small pieces of jewelry and two tie clasps which had been removed from the yacht club, and a memorandum made by an employee of the club. Also in the car was a white shirt bearing a laundry mark which indicated it belonged to someone named Smith, who lived in Noroton Heights, Darien, Connecticut. The defendant's parents lived there, and he often stayed there with them.

Shortly before the car was first noticed the defendant had been seen inside the Hollywood Cafe. The Cadillac had been stolen from one Frederick B. Freid of Stamford, Connecticut, and at that time it bore the registration number plates SS–404. There was testimony at the trial to the effect that Smith had been seen during the months of June and July, 1949 driving a Cadillac automobile of the same general description as the Freid car and bearing at one time the license plates SS–404 and later SL–513.

Throughout the trial, at which the defendant took the stand in his own behalf, and to the present time petitioner has denied all implication in the killing. Furthermore he denies all connection with the Cadillac automobile found in Brewster, New York.

In his petition for writ of habeas corpus the petitioner makes a wholesale attack upon the proceedings which resulted in his conviction and sentence. The petition, numbering over 260 pages, incorporates a lengthy memorandum of law in support of his claims as well as 222 "counts" in which allegations of a denial of due process and equal protection of the law are set forth. Except as hereinafter noted petitioner has exhausted available state remedies. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Although many of the allegations in the petition are clearly without merit, due to the seriousness of the claims, the "counts" will be considered seriatim.

## PRE-TRIAL PROCEEDINGS

### a) Search and Seizure

In count 211 of the petition there is alleged a denial of due process of law on grounds that the use at trial of evidence found in the Freid Cadillac stemmed from an illegal search of the car by New York police. It is conceded the search was not made pursuant to a warrant and was not incident to a lawful arrest nor with the petitioner's consent. However, the search took place prior to the ruling of the Supreme Court of the United States in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Although petitioner contends otherwise, we feel it is unnecessary to reach the unsettled question regarding the retroactive application of the Mapp doctrine.[1] Even assuming *arguendo* the Mapp doctrine applies retroactively, petitioner, having disclaimed all proprietary interest in the Freid Cadillac, may not now claim a personal protection against an unreasonable search of that car. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Serrano, 317 F.2d 356 (2 Cir. 1963); Eberhart v. United States, 262 F.2d 421 (9 Cir. 1958); Shurman v. United States, 219 F.2d 282 (5 Cir. 1955), cert. denied 349 U.S. 921, 75 S.Ct. 661, 99 L.Ed. 1253 (1955).

Petitioner's reliance on Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 233 (1960), is misplaced. There the Court held the government could not take the position that a defendant did not have sufficient possessory interest in seized property to claim Fourth Amendment protection against the seizure and at the same time seek to convict the defendant for possession of that property. In the present case it is the petitioner who consistently maintains a lack of possessory or any other interest in the Freid Cadillac. He cannot simultaneously with that position claim a constitutional protection to which he might otherwise have been entitled. The right to protection against an unreasonable search and seizure is personal, and a defendant in a criminal

---

1. See Hall v. Warden, 313 F.2d 483 (4 Cir. 1963); United States ex rel. Holloway v. Reincke, 229 F.Supp. 132 (D. Conn.1964), and compare, United States ex rel. Angelet v. Fay, 333 F.2d 12 (2 Cir. 1964); United States ex rel. Eastman v. Fay, 333 F.2d 28 (2 Cir. 1964); United States ex rel. Linkletter v. Walker, 323 F.2d 11 (5 Cir. 1963), cert. granted 377 U.S. 930, 84 S.Ct. 1340, 12 L.Ed.2d 295 (1964); Reynolds v. United States, 324 F.2d 371 (5 Cir. 1963); Sisk v. Lane, 331 F.2d 235 (7 Cir. 1964); Gaitan v. United States, 317 F.2d 494 (10 Cir. 1963).

case who claims no proprietary or possessory interest in the seized property has no standing to object to the method of seizure. Williams v. United States, 323 F.2d 90, 94 (10 Cir. 1963); United States v. Serrano, supra, Shurman v. United States, supra. Accordingly, petitioner has no standing to object to the search of the Freid car and the subsequent use of articles found therein as evidence against him at his trial.

b) *Speedy Trial*

In counts 77 and 78 petitioner alleges he was denied due process and equal protection of the law on grounds he was denied the right to a speedy trial. In support of this claim petitioner points to the fact that he was arrested on July 23, 1949 and was not brought to trial until May 16, 1950. Petitioner further points out that his co-defendant, George Lowden, and two other persons, who were charged with murders committed after the murder for which Smith was accused, were tried before he was.

At the time of the petitioner's trial in 1950 there was only one judge available to handle criminal trials in Fairfield County. The Criminal Term of the Superior Court opened on September 20, 1949. On September 30, 1949, a grand jury was convened to consider the Hart murder and on October 4, 1949, both Smith and Lowden were indicted for murder in the first degree. Both men were arraigned on October 6, 1949. The Lowden trial commenced on October 19, 1949 and after a partial trial, he entered a plea of guilty to murder in the second degree on November 4, 1949. Two other murder cases were tried to the jury and 139 other criminal cases were disposed

of before the petitioner's trial started on May 16, 1950.

Under these circumstances, the nine-month delay in bringing petitioner to trial is understandable. In any event the petitioner makes no showing of non-acquiescence in the delay and the record discloses he raised no objection to the delay during the period of his incarceration prior to trial. He, therefore, cannot complain now. State v. Doucette, 147 Conn. 95, 157 A.2d 487 (1959); State v. Holloway, 147 Conn. 22, 156 A.2d 466 (1959); Fowler v. Hunter, 164 F.2d 668 (10 Cir. 1947); and cases collected at 57 A.L.R.2d 326. Furthermore, at his trial petitioner objected to the summoning of talesmen to sit as jurors[2] and, if he had prevailed, his trial would have been delayed for at least another four months. See, State v. Smith, 138 Conn. 196 at 203, 82 A.2d 816.

c) *Insufficiency of the Indictment*

Several counts[3] of the petition challenge the sufficiency of the indictment upon which petitioner was charged. Specifically, he claims he was convicted of a crime other than that charged in the indictment[4] and, further, the vagueness of the indictment prevented full apprehension of the charges against him.

These claims have not been presented to any state court for adjudication, and consequently petitioner has not exhausted available state remedies in conformance with 28 U.S.C. § 2254. Even if this were not the case, federal courts, as a general rule, do not consider attacks upon the sufficiency of an indictment on petition for writ of habeas corpus. See, Knewel v. Egan, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036 (1925); Kimbro v. Bomar,

2. Respondent's exhibit "1", p. 1.

3. 206, 207, 208, 209, 219, 220, 221, 222.

4. The indictment upon which petitioner was charged reads as follows:
  "To the Honorable Superior Court for the County of Fairfield, State of Connecticut, now in session at Bridgeport, in said county, for the transaction of criminal business:
  The Grand Jurors within and for said county accuse Francis Clifford Smith,

of 35 Linden Ave., Darien in said county, of murder in the first degree and charge, that on the 23rd day of July, 1949, at Greenwich in said county, the said Francis Clifford Smith wilfully, deliberately, with premeditation and malice aforethought, did shoot and kill one Grover S. Hart, against the peace and contrary to the form of the statute in such case made and provided.

Oct. 4th, 1949
A True Bill"

333 F.2d 755 (6 Cir. 1964); United States ex rel. Scott v. Walker, 218 F. Supp. 866 (E.D.La.1963). Parenthetically it is noted, however, that petitioner's attack on the indictment is without merit. He contends his conviction was affirmed by the Supreme Court of Errors on the ground it was a murder committed during the perpetration of a theft, and that this is at variance with the indictment. A reading of the opinion of the Supreme Court of Errors clearly indicates the petitioner's conviction was affirmed as a premeditated murder done with malice aforethought.[5] Since the indictment charged the petitioner with this crime, petitioner's claims would fail if the question of the sufficiency of the indictment were to be reached by this Court.

## THE TRIAL

### d) Insufficiency of the Evidence

In some 35 counts[6] of his petition, petitioner claims the weight and probative value of the evidence at his trial was insufficient to sustain his conviction.

■ Insufficiency of evidence amounting to the denial of due process arises only in those circumstances wherein the state court conviction is entirely devoid of evidentiary support. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); Garner v. State of Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). When the state court conviction is supported by the record, the federal court should not serve as a forum for an additional appeal. Grundler v. State of North Carolina, 283 F.2d 798, 802 (4 Cir. 1960); Telfian v. Sanford, 161 F.2d 556 (5 Cir. 1947), cert. denied, 332 U.S. 781, 68 S.Ct. 48, 92 L.Ed. 365 (1947). The record in the instant case clearly indicates there was sufficient evidence to support a conviction under state law. There are no circumstances which present a federal question on this issue. Faust v.

---

5. "To warrant a conviction, there must be no reasonable doubt as to any essential element of the crime charged. [Citing case.] An essential element of the crime of murder in the first degree as charged in the indictment in this case was that the killing was wilful, deliberate and premeditated. The only reasonable inference from the fact that the defendant in this case carried a deadly weapon with him when he was engaged in the commission of a theft was that he planned to kill anyone who interfered with him. That means that for an appreciable period of time before the shot was fired he premeditated a killing. [Citing cases.] The evidence was adequate to justify the jury in concluding that it had been established beyond a reasonable doubt that the defendant was guilty of murder in the first degree."

6. Counts 1, 3, 4 claim the conviction based upon a killing during the commission of a theft cannot stand due to a lack of proof of the theft, or, in counts 2, 5, 6, lack of proof that the theft of articles from the yacht club were connected with the killing.

   Count 7 alleges the evidence is insufficient to prove a premeditated killing, and counts 8, 9, 10, 182 claim the evidence did not preclude the possibility that the killing was done in self defense or was otherwise justified or excused.

Counts 13, 18, 21 allege the evidence is insufficient to prove the spent bullets were connected with the crime. Counts 15, 20 allege the evidence could have been interpreted as proving the victim of the killing fired the spent bullets found at the yacht club, and count 17 alleges the evidence is insufficient to prove an essential element of the offense, viz. the victim had been killed by another.

Counts 11, 12 allege the evidence is insufficient to prove the .22 caliber Colt pistol found in the Freid Cadillac was connected with the shooting. Counts 31, 33, 35, 37 claim the evidence is insufficient to prove petitioner drove the Freid Cadillac or was at the Hollywood Cafe in Brewster, New York on the night the Cadillac was found. Counts 212, 213, 214, 215, 218 allege the evidence was insufficient to prove and to allow the Connecticut Supreme Court of Errors to uphold the finding that the Freid Cadillac or the marker plates found thereon had been stolen.

Counts 32, 36, 216 claim the evidence regarding the Freid Cadillac and the articles found therein, as well as the evidence adduced at the trial in general, is consistent with the guilt of co-defendant George Lowden and Lowden alone. Count 41 asserts the general claim that the evidence as a whole would not support the conviction.

State of North Carolina, 307 F.2d 869 (4 Cir. 1962), cert. denied, 371 U.S. 964, 83 S.Ct. 547, 9 L.Ed.2d 511 (1962).

### e) Credibility of Witnesses and Instructions to Jury

Many of the counts in the petition seek relief on grounds of lack of credibility of witnesses,[7] and errors in instructions to the jury.[8]

█ Developing from the long standing postulate that habeas corpus will not be used as a substitute for a writ of error, Ex parte Parks, 93 U.S. 18, 23 L.Ed. 787 (1876); In re Coy, 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed. 274 (1888), it has been held with consistency that, "Attacks upon the sufficiency of the evidence and the veracity of witnesses cannot be challenged through the medium of habeas corpus, but must be raised by appeals." Schlette v. People of State of California, 284 F.2d 827, 834 (9 Cir. 1960); Trujillo v. Tinsley, 333 F.2d 185 (10 Cir. 1964); Harrison v. Boles, 307 F.2d 928 (4 Cir. 1962); United States

7. Counts 46 through 60 and 217 attack the credibility of the witness Kane, owner of the Hollywood Cafe in Brewster, New York. Kane testified on behalf of the state at petitioner's trial and identified petitioner as being present at the cafe on the night the Freid Cadillac was discovered in the adjacent parking lot.

8. The majority of the counts in the petition, 98 of 222, challenge in one way or another the trial court's charge to the jury. Allegations of denial of due process and equal protection of the law are claimed to arise from errors of commission and omission in the charge.

Count 63 attacks the failure to take from the jury any consideration of a theft during the commission of the crime for which petitioner was charged. Counts 64, 161, 162 attack the failure. to take from the jury consideration of first degree murder; count 66 makes similar claim respecting second degree murder; counts 67, 179 ditto regarding manslaughter.

Counts 68 and 139–146 (inclusive) are based on the failure of the trial court to take from the jury any consideration of the weight and probative value of the Kane testimony identifying petitioner as present at the Hollywood Cafe on the night the Freid Cadillac was discovered there.

Counts 70, 71, 117–120, 124–138, 147–156, 163, 177, 192, 193 allege constitutional dimension errors regarding all evidence tending to link petitioner with the Freid Cadillac, tending to show the Freid Cadillac was in fact stolen, or excluding the possibility that someone other than petitioner was operating the car on the night it was found.

Counts 72, 73, 164 claim error for failure of the trial court to take from the jury the consideration of all circumstantial evidence.

Count 74 claims the trial court should have taken from the jury any consideration that the spent bullets found at the yacht club were fired by the victim's assailant; count 75 makes similar claim that the jury should not have been allowed to consider that the spent bullets were fired by anyone at all. Count 76 makes similar claim respecting the cartridge cases found at the yacht club.

Counts 80, 81, 111, 112, 113, 114, 115, 116 allege the trial court erroneously charged the jury regarding the testimony of Major Carroll concerning certain admissions made by the petitioner.

Counts 83, 176, 178 claim error in the charge regarding the items stolen from the yacht club and found in the Freid car. Counts 88, 89, 90, 91 claim error in that the trial court failed to charge the jury on larceny. Counts 100, 101, 173, 174, 180, 181, 183, 184, 185, 186 claim error in the trial court's failure to charge the jury on the defense of justification and excuse. Count 167 claims the court erroneously charged the jury on the element of premeditation.

Counts 166, 168–172 and 190, 191, 194, 195 claim error in the court's charge on the defense of alibi and the testimony of the defense witnesses regarding the alibi. Count 187 claims the court erroneously failed to charge the jury to the effect that the failure of the state to put into evidence what the dying victim answered to the question "What happened?" should be considered by the jury as presumably adverse to the state's case. Counts 188, 189 make the same claim respecting the failure of the state to prove the shirt and jacket size (those items having been found in the Freid car).

Counts 196, 197 claim error in the trial court's failure to mention the Scheck testimony in its charge.

Counts 79, 198, 199 claim error in the manner in which the trial court charged the jury.

ex rel. Rooney v. Ragen, 173 F.2d 668 (7 Cir. 1949).

▇ Similarly, habeas corpus will not lie either to examine the failure of the trial court judge to charge the jury on a particular matter, Greyson v. Commonwealth of Kentucky, 333 F.2d 583 (6 Cir. 1964), or to set aside a state court conviction if the instructions to the jury were erroneous in part. Schiers v. People of State of California, 333 F.2d 173 (9 Cir. 1964). Before a federal court may intervene on habeas corpus, the charge to the jury "must consist of the omission of essentials to such an extent that the accused is denied a fair trial in the Constitutional sense." Kenion v. Gill, 81 U.S.App.D.C. 96, 155 F.2d 176, 178 (1946). A careful review of the charge to the jury in the instant case fails to reveal any error in the instructions in the constitutional sense.

f) *The Lowden Testimony*

In 38 counts [9] of the petition there are allegations of denial of due process and equal protection of the law arising out of the manner in which Lowden was interrogated by the prosecutor during the trial. Lowden, who had previously pleaded guilty to second degree murder for his involvement in the same murder for which petitioner was then on trial, was called as a witness for the state.[10] Upon taking the stand and before any questions were asked, Lowden informed the Court, "I don't want to be a witness for the defense or prosecution." The prosecutor then stated that he thought he should be allowed to proceed as far as he could with the witness, and the Court permitted him to begin examination. The prosecutor then asked several introductory questions all of which were answered by the witness.

Following the question, "Do you know Frank Smith?", counsel for petitioner objected and argued to the Court that the witness had not been instructed as to his rights with respect to self-incriminating statements. The Court then informed Lowden he had a right to remain silent if an answer would tend to degrade or incriminate him. The prosecutor resumed his questioning and was again interrupted by defense counsel by an objection on behalf of the witness. The Court then asked Lowden if he wished the advice of counsel, and, receiving an affirmative reply, the Court excused the witness from the stand in order to obtain counsel for him.

The prosecutor then called and examined three more witnesses before Lowden resumed the stand with counsel in court to advise him.[11] Upon resuming the stand Lowden was asked some eighteen questions before he refused to answer on grounds it might incriminate him. Following this refusal the prosecutor asked Lowden to explain how an answer might incriminate him, to which he

---

9. Counts 22, 26 allege error in permitting the prosecutor to cross-examine Lowden after he refused to testify. Counts 23, 27, 110 claim error in allowing certain "hearsay" to be admitted during the Lowden testimony. Counts 24, 28 claim error in allowing the state to use Lowden's refusal to testify as evidence against the petitioner. Counts 25, 29 claim error follows from any and all matter adduced via the Lowden procedure, and count 69 claims all matter surrounding the Lowden testimony should have been taken from the jury.

Counts 30, 34 claim petitioner was deprived of the right to confront the witness against him via the Lowden testimony. Counts 84, 85, 86, 87 claim the prosecutor made prejudicial remarks during the cross-examination of Lowden.

Counts 108, 109 claim prejudice resulted from Lowden's remarks while on the stand regarding his friendship with the petitioner. Counts 157, 158, 159, 160 claim Lowden's plea of guilty was erroneously used as evidence against petitioner, and the trial court failed properly to warn the jury against so using Lowden's plea.

Counts 82, 102, 103, 104, 105, 106, 107 claim error in that the trial court instructed the jury that petitioner could be convicted on Lowden's testimony and that alone. Counts 92, 93, 94, 95, 96, 97, 98, 99, 165 claim error in the trial court's charge on common design.

10. Court's exhibit "1", pp. 157–163.

11. Court's exhibit "1", pp. 192–210.

eventually replied, "We will put it that it might incriminate Frank Smith, and then I refuse to do so."

At this point the prosecutor claimed surprise and requested the Court's permission to cross-examine the witness. Permission to cross-examine was granted, and during the remainder of Lowden's testimony he refused to answer, intermittently, seven questions out of approximately eighty asked him by the prosecutor. Two questions asked by the prosecutor warrant special mention:

"Do you recall, Lowden, in my office this morning you said to me in the presence of these prison officials that both you and Smith had guns that night?"

\* \* \* \* \* \*

"Didn't you tell me in my chambers this morning that there was a burst of fire from Smith's gun?"

■ Petitioner first contends the trial court erred in allowing the prosecutor to cross-examine Lowden on the basis of surprise, and the Supreme Court of Errors erroneously approved this procedure in the light of its previous holdings. The short answer to this claim is that a state court decision contrary to previous decisions " \* \* \* is not an infraction of the 14th Amendment merely because it is wrong or because earlier decisions are reversed." Patterson v. State of Colorado, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879 (1907). See also, Bizup v. Tinsley, 316 F.2d 284 (10 Cir. 1963).

■ Secondly, petitioner claims the prosecutor's examination of Lowden, when he knew or should have known Lowden would refuse to testify, was so prejudicial as to have deprived him of a fair trial. On their face and out of context the two questions, asked by the prosecutor and stricken by the trial judge, concerning Smith's possession of a gun and "a burst of fire from Smith's gun" might appear sufficiently prejudicial to have impressed the trial with a constitutional infirmity. However, in context these questions do not reach constitutional proportions. A review of the

record prior to these questions reveals the witness answered questions concerning Smith's possession of an automatic revolver, the witness' possession of a pistol, his familiarity with the Indian Harbor Yacht Club, his participation in the Hart murder, and so forth. Moreover, objections to these questions were sustained and in the charge to the jury the court expressly pointed out that the portions of the Lowden testimony which were stricken should not be considered in the determination of the issues in the case.

The circumstances surrounding Lowden's testimony in the instant case are unlike the situation where a prosecutor, knowing a witness will refuse to answer on self-incrimination grounds, persists in calling the witness in order to have the jury hear his refusal to answer. See, United States v. Maloney, 262 F.2d 535 (2 Cir. 1959); Fletcher v. United States, 332 F.2d 724 (D.C.Cir. 1964); but compare, United States v. Hiss, 185 F.2d 822 (2 Cir. 1950). Here, as indicated, Lowden, even after consulting with counsel, answered many questions addressed to him, refused to answer some on the grounds of self-incrimination, refused to answer other questions with such explanations as "I would rather not answer that", "I could not give you any exact reason for that", "I do not just want to be a witness against Frank or for the defense", "I just don't want to testify", and "it might incriminate Frank Smith and then I refuse to do so." Every indication in the record supports the prosecutor's claim of surprise at Lowden's refusal to answer certain questions. There is no basis for concluding the prosecutor knew, prior to the witness' appearance on the stand, that he would be a hostile witness for the state. The prosecutor had no way of knowing to which questions the witness would respond and, therefore, was justified in probing the witness in cross-examination. In handling a difficult witness who after consulting with counsel, vacillates between hostility and cooperation, a prosecutor's "minor lapses through a long

trial" are somewhat understandable and not such errors as should be regarded as constitutional deprivations of the petitioner's fundamental rights to a fair trial. United States v. Hiss, supra.

Even assuming *arguendo* the prosecutor persisted in questioning Lowden in the face of consistent refusals to answer, such questioning would not assume constitutional dimensions. In Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), the Supreme Court pointed out that a prosecutor's questions to two witnesses, which he knew would not be answered on self-incrimination grounds, did not present "constitutional issues of any kind." 373 U.S. at 185, 83 S.Ct. 1151.

### g) *The Springer Testimony*

In fourteen counts [12] of the petition, petitioner asserts in substance that the prosecutor knowingly used the perjured testimony of one Edith Springer at the trial.

At petitioner's trial Miss Springer was called as a witness for the state.[13] She testified that she had been out with the petitioner on a number of occasions prior to the time of the killing, and on each of these occasions the petitioner had been driving a gray Cadillac automobile. Furthermore she testified that she had seen license plates number SS–404 on the Cadillac on one occasion, and at a later time she had seen license plates number SL–513 on the same car. It had previously been established at the trial that the Freid Cadillac found containing the items stolen from the scene of the killing had been registered with license plates number SS–404.

Over a year after petitioner's conviction Miss Springer wrote to a judge of the Superior Court from her place of incarceration in an Alabama prison, informing him that she had perjured herself at petitioner's trial and in effect recanting her entire testimony. At a later deposition hearing Miss Springer reaffirmed her recantation under oath.[14]

On the basis of this recantation petitioner applied for a new trial. His petition was denied after a full hearing and the denial affirmed on appeal. Smith v. State, 139 Conn. 249, 93 A.2d 296 (1952).

At the hearing before this Court petitioner introduced Miss Springer's deposition in which she recanted her testimony at the trial and admitted to perjury. Respondent offered no evidence to refute this recantation other than the record of petitioner's trial.[15] However, the trial judge, who denied Smith a new trial, did hear the testimony of six witnesses in rebuttal to the Springer recantation and, on appeal, the Supreme Court of Errors concluded "we would reach the same result if we had to decide the case on the merits." 139 Conn. at 253, 93 A.2d at 298. This Court finds the petitioner failed to sustain his burden of proof that the Springer testimony at trial was perjured.

Of course, it is well established that a conviction obtained through use of false evidence, known to be such by representatives of the state, must fall under the Fourteenth Amendment. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942); Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957); Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). However, it is equally clear from each of these cases that knowledge

---

12. Counts 38, 39, 43 allege a denial of due process on grounds the prosecutor knowingly used perjured testimony against the petitioner at his trial. Count 40 makes similar claims on grounds the prosecutor deliberately coached the witness into perjuring herself. Counts 42, 44, 45, 61, 62, 65 allege a denial of due process on the basis of the use of the Springer testimony at the trial, in allowing the jury to consider it, and in refusing to have other testimony "prevail over it." Counts 121, 122, 123, 134 allege a denial of due process for the failure of the trial court to charge the jury properly with respect to the Springer testimony.

13. Court's exhibit "1" pp. 116–124.

14. Petitioner's exhibit "T".

15. State's exhibit "1".

of the falsity of the testimony by the prosecuting officials is an essential element.[16]

In the present case, assuming petitioner produced sufficient evidence tending to show the witness Springer perjured herself at his trial, there is no evidence to show that the prosecuting officials knew of the perjury. The petitioner points to a pre-trial statement [17] given by Miss Springer in which she mentions only license plates number SL–513 and not SS–404. From this it is claimed this Court should infer that the prosecutor knew or should have known Miss Springer was committing perjury when she testified concerning license plates number SS–404 at petitioner's trial.

Such conclusion does not follow. At most the prosecutor might have known Miss Springer was testifying to something in addition to that which she had reported in her previous statement. It does not mean the prosecutor was chargeable with knowledge of its falsity. Furthermore there is some indication from the record that Miss Springer had previously referred to both license plates in a previous proceeding.[18] Indeed in her deposition Miss Springer makes clear she was not coached or induced to make false statements, and the prosecutor had no way of knowing her testimony was in fact false.[19]

Consequently, this Court concludes that, even if the testimony of the witness Springer were perjured, no due process issue is raised, because there is insufficient showing it was knowingly used by the State.

### h) Competency of Counsel

In four counts [20] of the petition claims of denial of due process are based on allegations of the negligent and incompetent manner in which petitioner's defense was conducted during the trial.

If the incompetence of counsel were "of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice", habeas corpus relief is justified. United States v. Wight, 176 F.2d 376 (2 Cir. 1949); United States v. Miller, 254 F.2d 523 (2 Cir. 1958); United States v. Bentvena, 319 F.2d 916 (2 Cir. 1963); United States v. Gonzalez, 321 F.2d 638 (2 Cir. 1963).

Petitioner's general unsupported assertions on this issue are clearly insufficient. A review of the record [21] reveals that defense counsel, who presently is the Chief Judge of the Superior Court for this State, conducted the defense in a competent, effective manner, far above that required by the constitutional minimum.

### i) Remaining Issues

The remaining counts [22] are on their face frivolous and merit no discussion.

Accordingly, the petition for a writ of habeas corpus is denied. Judgment is entered for the respondent.

---

16. To the extent that United States ex rel. Miller v. Pate, 226 F.Supp. 541 (N.D.Ill.1963) is to the contrary, this Court regards the teachings of that case as inconsistent with the requirement of knowledge posited by the Supreme Court in the aforementioned cases. See also, Rollins v. Boles, 228 F.Supp. 6, 8 (N.D.W.Va.1964).

17. Petitioner's exhibit "S–A".

18. Court's exhibit "1", p. 121.

19. Petitioner's exhibit "T".

20. 202, 203, 204, 205.

21. Court's exhibit "1".

22. In a second count numbered "209" (see, n. 3, supra) petitioner alleges, without supporting facts, that he should be discharged from custody "so as to prevent the petitioner from being subjected to double jeopardy."
Count 210 has been withdrawn at petitioner's request.
Petitioner's argument respecting the summoning of talesmen to serve as jurors at his trial (p. 6 of the petition) is not incorporated into any of the 222 "counts" of the petition. In any event this issue was resolved by the Connecticut Supreme Court of Errors in State v. Smith, 138 Conn. 196, 203, 82 A.2d 816 (1951) and would not be disturbed upon petition for writ of habeas corpus, as it is solely a matter of state criminal law and procedure.

The Court expresses its appreciation to Paul W. Orth, Esq., petitioner's assigned counsel, for his diligent and competent presentation of the issues both in brief and on argument.