[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Petitioner brought this action under Conn. Gen. Stat. 52-270 seeking a new trial on the basis of newly discovered evidence. In September, 1990, petitioner was tried before a jury on charges of robbery in the first degree, conspiracy to commit robbery in the first degree and assault in the second degree. The jury of six returned verdicts of guilty to those charges on September 25, 1990. While petitioner filed a motion for a new trial on which the court, Heiman, J., held a hearing, no decision was issued on that motion. On November 9, 1990, Judge Heiman imposed a total effective sentence of twenty-three years on petitioner.
Petitioner's claim that newly discovered evidence warrants a new trial centers on doubts first expressed by the victim, Timothy Wallace, on September 26, 1990, to petitioner's mother, Ada Johnson. Ms. Johnson saw Wallace outside a pharmacy in the late afternoon of the day following the verdict, asked if he were Timothy Wallace, told him who she was, that the verdict was guilty and asked Wallace if he was sure about his identification of her son. He replied that he was not sure. On September 27, 1990, Wallace gave a statement to an investigator from the public defender's office. In that statement Wallace said that he saw Keith Johnson for the first time in person on September 17, 1990 when Wallace testified in the trial. He had picked out Johnson's photo from a photo array the day after the robbery. He further said in his statement, "I thought to myself at that time [September 17, 1990] that he didn't look like the person who held me up by gunpoint at the time of the robbery. I did testify that day that Keith Johnson was involved in the robbery, however I now think I may have made a mistake in identifying him." At the hearing on Johnson's motion for a new trial in October, 1990, Wallace testified that he was about 40% sure of his identification, that he could not say it was or was not Johnson. Wallace stood face to face with petitioner at the hearing on October 12, 1990. Johnson had been seated during his trial while Wallace testified.
At the hearing on the petition for a new trial Wallace testified that after seeing Johnson standing he became sure that Johnson was not the man with a handgun involved in the robbery. that the man with the handgun was shorter and not as heavy as Mr. Johnson. At Johnson's trial, Wallace testified that he said in his statement to the police that the man with the handgun was five feet six inches tall, but the person with the handgun was five ten, medium build. He further testified that he is six feet, six feet one inch tall. At Johnson's trial, he positively identified Johnson as the person with the handgun and testified that Johnson was a little bigger on the day of trial than he was on the date of the robbery and was wearing glasses at trial. Mr. Johnson testified during the hearing on his petition that he had gained about five to ten pounds between his arrest on October 12, 1989 when he weighed about 238 pounds CT Page 4916 and his trial in September, 1990. At the time of the hearing, he testified he weighed 283 pounds. Mr. Wallace testified that he now has no doubt that petitioner was not involved in the robbery. What began as an unexpressed doubt on September 17, 1990, graduated to the possibility of a mistake on September 27, 1990, became a certainty of error in identification by December, 1992.
In a petition for a new trial, the "petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proferred evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial." Asherman v. State, 202 Conn. 429, 434 (1987). While petitioner argues that Mr. Wallace's recantation was not discoverable until after the trial, this change in Wallace's level of certainty is more akin to that dealt with in State v. Edwards, 10 Conn. App. 503, 515 (1987) than to the cumulative effect of the fingerprint identification, timing of phone calls, and psychiatric testimony based on testing not admissible at the time of trial facing then Judge Speziale in Reilly v. State,32 Conn. Sup. 349 (Super.Ct. 1976). As the Appellate Court pointed out in State v. Edwards, supra, quoting Lancaster v. Bank of New York,147 Conn. 566, 578 (1960) newly discovered evidence which "would merely affect the credibility of a witness, . . .is not a ground for a new trial unless it is reasonably probable that on a new trial there would be a different result."
Courts in Connecticut and other jurisdictions view such recantations as proferred by petitioner here with understandable skepticism. See, e.g., Thacker v. Commonwealth, 453 S.W.2d 566, 568, (Ky.App. 1970), cited in Carvel v. Commonwealth, 694 S.W.2d 469, 470 (Ky.App. 1985) and Shields v. The State, 45 Conn. 266, 270 (1877). As the court in Shields said, "After the trial is over and the accused stands convicted, with the heavy penalty of law impending and just ready to fall upon him, how easy by artful and even honest suggestion to awaken a sympathy even in the heart of the victim, who was the main, perhaps only witness against the accused, and who naturally feels responsible for the conviction; and how easy for such witness by a process of speculation, colored by feeling, to feel and express a doubt about the correctness of the opinion entertained at the time of the transaction." At the time Mr. Wallace first expressed that he "may have made a mistake," he knew Mr. Johnson had been convicted, had met Johnson's mother, knew that she had testified at the trial and presented an alibi defense. Mr. Wallace's doubts were based on the differences in height and weight which he perceived. This, however, from a witness who testified that Johnson's counsel at trial, Robert Britt, was about six feet tall. Mr. Britt testified that he is under 5'11". CT Page 4917 Mr. Johnson testified that he had, gained weight between the time of his arrest and his trial. While Wallace now maintains that Johnson was not the man with the handgun he testified at trial that, although his statement to police gave that man's height as 5'6", he was, in fact, 5'10" to 5'11". Johnson testified that he is six feet tall, two to three inches taller than Wallace's estimate at trial. Wallace, after describing the clothing worn at trial by the man who was armed with a handgun during the robbery, further testified that the man was bigger than he was last year and was wearing glasses at trial, but not during the robbery. While Mr. Wallace later maintained that his uncertainty began at trial, he expressed no such doubts during his testimony. While Mr. Johnson's counsel did attack Wallace's credibility by use of a prior inconsistent statement at variance with his testimony at trial, he did not question Mr. Wallace with respect to the in court identification, Cf. Kubeck v. Foremost Foods Co., 190 Conn. 667, 673 fn. 6 (1983) regarding responsibility of a party for his attorney's lack of diligence, because. in light of the circumstances, it did not raise a strong question.
Granting to petitioner that Mr. Wallace's "recantation" is newly discovered, that is not the end of the inquiry. While this Court does not share the sentiments which Judge Cardozo expressed in People v. Shilitano,218 N.Y. 161, 169, quoted in Smith v. State, 139 Conn. 249, 252-53 (1952), having reviewed the transcript of Mr. Johnson's trial and viewed the witnesses at the hearing on this motion, the court views Mr. Wallace's position now that Johnson was not the man with the handgun as something akin to buyer's remorse. Petitioner must prove by a preponderance of the evidence that this evidence would likely produce a different result in a new trial. While Wallace would likely testify that Mr. Johnson was not one of the men who robbed him, his prior testimony and written statements would be admissible for substantive purposes under State v. Whalen, 200 Conn. 743,753-4 (1986). All of those occurred closer in time to the robbery than his first unequivocal statement that Johnson did not participate in the robbery. Given Mr. Wallace's own admission that his memory of the events has diminished over time and his persistence that his out of court identification of petitioner through the photo array was accurate it seems highly unlikely that a trier of fact would credit the last statements of Wallace over the earlier ones. When one couples that with the discovery of the green swatch watch in the pocket of the Whaler's jacket taken from Wallace by the man with the handgun, which discovery was made right before the exhibits were delivered to the jury, the avenues for attack on Wallace's credibility regarding his former statements are diminished. Additionally, the watch itself would likely be introduced into evidence. Viewed in conjunction with evidence presented at the original trial, Asherman v. State, 202 Conn. 429, 434 (1987), this court is not persuaded by a preponderance of the evidence that a new trial would likely produce a CT Page 4918 different result.
Judgment should enter for the defendant.
SUSCO, J.
CT Page 4918