[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This habeas petitioner claims that his confinement in the custody of the Commissioner of Corrections is unlawful on the basis of his assertion that he was denied the effective assistance of counsel in the underlying criminal proceedings. More specifically, by his Fourth Amended Petition dated January 26, 1996, the petitioner alleges that trial counsel failed to properly conduct a pre-trial investigation; failed to adequately cross-examine the sole witness to the crime; and, failed to speak with an exculpatory witness. Based on the evidence adduced at trial, the court makes the following findings and order.
On September 25, 1990, following a jury trial in the Superior CT Page 252-A Court, Hartford Judicial District, the petitioner was convicted of the offenses of Robbery in the First Degree in violation of Connecticut General Statutes §§ 53a-134 (a)(2) and 53a-8, Conspiracy to Commit Robbery in the First Degree in violation of C.G.S. §§ 53a-134 (a)(2) and 53a-48 (a), and Assault in the Second Degree in violation of § 53a-60(a)(2).
On November 9, 1990 the petitioner was sentenced by the court, Heiman, J., to a total effective sentence of twenty three (23) years confinement in the custody of the Commissioner of Corrections. The petitioner is currently a sentenced inmate in the custody of the Commissioner of Corrections.
The petitioner's conviction was affirmed on direct appeal.State v. Johnson, 28 Conn. App. 645, cert. denied, 224 Conn. 901
(1992).
In the underlying criminal trial the petitioner was represented by Attorney Robert Britt. The State was represented by Assistant State's Attorney Edward Narus.
While the underlying facts are recited in the Appellate Court opinion, some reference to the facts is necessary to discuss the petitioner's claims. At trial, the State introduced evidence that at approximately 6:30 p.m. to 6:45 p.m. on October 12, 1989, CT Page 252-B Timothy Wallace and Eugene Finley were afoot near the corner of Huntington and Ashley Streets in Hartford when they were accosted by three men, one carrying a sawed off shotgun and another in possession of a handgun. After Finley was told to leave, Wallace was robbed of a Hartford Whaler jacket, a watch, and fifty four dollars. Additionally, one of the assailants struck him in the nose and eye with the handgun. Shortly thereafter, at approximately 7 p.m., Wallace met with a Hartford police officer, Jeffrey Chickerella, to whom he described the assailants. At approximately 7:55 p.m., three suspects, including the petitioner, were apprehended and taken into custody. When they were stopped, one of the three men was carrying a sawed off shotgun. Additionally, one of them had a Hartford Whaler jacket in his possession. None was found in possession of a handgun, and no handgun was ever recovered in conjunction with this crime.
On the next day, Wallace made a positive identification of each of the three assailants from separate photo arrays. He also gave a, written statement.
In the consolidated criminal trial of the three defendants, the State called Wallace who made a positive, in-court identification of all three defendants, who were the three individuals apprehended by the police on October 12, 1989. For reasons which are not apparent on the record, Finley did not CT Page 252-C testify.
Wallace, who was eighteen years old on the date of the offense, testified that he gave a Hartford police officer a physical description of the assailants shortly after the offense, and that he gave a written statement, with somewhat different descriptions, on the following day. Jeffrey Chickerella, the Hartford police officer who initially interviewed Wallace on the night of the incident, testified that Wallace had initially stated that he was confronted by three black males, one approximately six feet tall, one hundred fifty five pounds, with short, black hear, wearing a brown overcoat, and carrying a shot gun. He described the second male as shorter, approximately, five feet six inches, a hundred forty pounds, approximately twenty nine years old, with dark complexion. Officer Chickerella testified that Wallace told him this individual had been wearing a black kango hat and a goose down jacket, and that he had been carrying a hand gun. As to the third assailant, Officer Chickerella stated that Wallace had described him as a black male, twenty nine years old, about five feet eight inches, a hundred and eighty pounds, with short black hair and a dark complexion. During cross examination of Officer Chickerella, it became evident that on the day following the incident Wallace told the police that it was not the man wearing the goose down jacket and kango hat who had the handgun, but it was the man previously described as being CT Page 252-D shorter than one and taller than the other, the man he identified from a photo array as the petitioner. In his written statement given the day after the incident, Wallace described the petitioner as being between five foot eight and five foot ten, with dark complexion.
Detective Michael Manzi testified that he showed a photo array of eight photographs to Wallace on the day after the incident, from which Wallace made a 100% identification of the petitioner. He identified him as the assailant who had held the handgun to his head and who had struck him with the gun.
While the petitioner did not testify during his trial, Attorney Britt called his mother, Ada Johnson, who testified that the petitioner is six feet tall. She, and several family members claimed that the petitioner was at home during the time the incident occurred. This alibi testimony was corroborated by an unrelated person, Mildred Gill, who was visiting the home, and who stated that when she left Ada Johnson's home shortly after 7 p.m., the petitioner was still there.
The petitioner claims that trial counsel failed to conduct a sufficient pre-trial investigation, and that his cross examination of the State's primary witness, Wallace, was inadequate.
In order for the petitioner to succeed in his claim that he CT Page 252-E was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v.Washington, 466 U.S. 668 (1984), Bunkley v. Commissioner,222 Conn. 444 (1992), Copas v. Commissioner, 234 Conn. 139 (1995).
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Citations omitted; internal quotations marks omitted.) Johnson v. Commissioner,36 Conn. App. 695 (1995). CT Page 252-F
The Strickland court also gave guidance to the trial bench for its assessment of ineffective claims. The Supreme Court opined: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy' . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.)Strickland v. Washington, supra, 466 U.S. 689-90; Quintana v. Warden,220 Conn. 1 (1991); Williams v. Warden, 217 Conn. 419 (1991); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland
CT Page 252-G test, the petitioner must demonstrate that,". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v.Washington, supra 466 U.S. 687. Thus, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v. Commissioner,234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v.Washington, supra 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" Fair v. Warden,211 Conn. 398, 408 (1989); Jeffrey v. Commissioner, 36 Conn. App. 216
(1994).
The petitioner asserts that trial counsel failed to properly conduct a pretrial investigation by not questioning Wallace or Finley in advance of the trial. Attorney Britt was appointed to represent the petitioner in April, 1990. Approximately a month CT Page 252-H later, the petitioner met with Attorney Britt who was then in possession of police reports and other documents from the State's Attorney's office. From these reports, it was clear to counsel that Wallace's descriptions of the petitioner were inaccurate in some respects, and also inconsistent. Aware of these discrepancies, the petitioner asked Attorney Britt to arrange for a line up. He also suggested that counsel meet with Wallace in order to establish whether Wallace was, in fact, sure of his identification of the petitioner as one of the assailants.
During his habeas trial testimony, Attorney Britt stated that he met with the petitioner's alibi witnesses prior to the trial, and he assessed them as credible witnesses. Attorney Britt acknowledged that he did not speak with either Wallace or Finley prior to the trial. He stated that he was aware from a review of the State's Attorney's file that Wallace's identification of the petitioner was flawed and inconsistent. Attorney Britt stated that, given the discrepancies in the Wallace's identification of the petitioner combined with his alibi witnesses, he thought it a better trial strategy to show the weaknesses in Wallace's identification of the petitioner through cross, examination during trial rather than risk tutoring him by pretrial questioning. The court accepts
Attorney Britt's testimony as credible. Moreover, the court CT Page 252-I does not fault counsel's plan to expose the unreliability of Wallace's identification during cross examination before the jury, rather than alert him before the trial. In making this determination, the court also accepts Attorney Britt's testimony that he perceived the alibi witnesses as credible. Thus, his decision to forego interviewing Wallace was not made in a vacuum. It was part of a trial strategy, a reasonable, albeit unsuccessful, plan.
While Attorney Britt had no specific recollection of the petitioner having asked him to arrange a post-arrest line-up, he testified that he decided to proceed to trial on the basis of Wallace's vulnerable identification and the petitioner's alibi witnesses. He believed that the risk that Wallace would cement his identification of the petitioner at a lineup outweighed the potential benefit this pre-trial procedure could bring to the petitioner. Under the facts then known to counsel, the court does not fault this strategy.
There is a dearth of information concerning Finley. From Wallace's testimony, it appears that his presence in the company of the assailants was momentary. Since he was not called to testify by the State in the criminal trial, nor by the petitioner in the habeas hearing, the court is unable to determine whether his criminal trial testimony would have been beneficial to the CT Page 252-J petitioner. The petitioner has not met his burden of proof that it was ineffective for counsel not to have interviewed Wallace and/or Finley prior to the trial.
With respect to Attorney Britt's cross examination of Wallace, the court finds that it was thorough and probative. Counsel pointed out the discrepancies between Wallace's initial verbal statement concerning the physical and clothing descriptions of the petitioner and his written statement the next day. He pointed out that Wallace had initially reported to the police that the assailants had stolen a gold watch from him though he was now claiming that it was a green cloth watch, and that he had misstated the amount of money taken from him. Through numerous probing questions, he established for the jury that Wallace had given varying descriptions of the petitioner's height and body size. Nevertheless, Wallace remained steadfast in his identification of the petitioner as one of the perpetrators.
Counsel's cross examination can not be fairly measured by its outcome. On reviewing the transcript of the criminal trial, the court finds that Attorney Britt's examination of Wallace, as well as the testifying Hartford police officers, was appropriate, even if not convincing to the fact finders.
During the habeas trial, it became evident that subsequent to CT Page 252-K the jury verdict, but prior to sentencing, Attorney Britt filed a motion for a new trial on the basis that Wallace had recanted his identification of the petitioner. Adduced as evidence at the habeas hearing was the transcript of the hearing on this motion conducted by Judge Heiman on October 12, 1990. While Judge Heiman did not actually rule on the motion because the grounds stated were more properly brought pursuant to a Petition for a New Trial, it is clear from a reading of the transcript that during a chance meeting with the petitioner's mother subsequent to the verdict, Wallace reported that he was no longer certain that the petitioner had been one of the perpetrators. Before Judge Heiman, Wallace vacillated between saying that he was (then) forty percent sure that the petitioner had been one of the assailants to his statement that the petitioner had not, in fact, participated in the crime. He did confirm that he had been sure, while looking at the photo array the day after the incident, that the petitioner was one of the assailants.
The petitioner then brought a Petition for a New Trial which was denied by Judge Susco following an evidentiary hearing on December 10, 1992 and January 4, 1993. Judge Susco's decision was affirmed on appeal. Johnson v. State of Connecticut, 36 Conn. App. 59
(1994). During the trial before Judge Susco, Wallace stated that he was now certain that the petitioner had not been one of the assailants. Thus, over a continuum of time, Wallace initially CT Page 252-L was 100% sure of the petitioner's identification from a photo array, remained steadfast during his in-court identification of the petitioner during the criminal trial, had doubts in conversation with the petitioner's mother and before Judge Heiman shortly after the verdict, and was convinced by the time of the hearing on the petition for a new trial. In the Memorandum of Decision denying the Petition for a New Trial, Judge Susco cited the Supreme Court in Shields v. The State, 45 Conn. 266, 270
(1877): "After the trial is over and the accused stands convicted, with the heavy penalty of law impending and just ready to fall upon him, how easy by artful and even honest suggestion to awaken a sympathy even in the heart of the victim, who was the main, perhaps only witness against the accused, and who naturally feels responsible for the conviction; and how easy for such witness by a process of speculation, colored by feeling, to feel and express a doubt about the correctness of the opinion entertained at the time of the transaction."
It is not the function of the habeas court to measure the adequacy of the conduct of defense counsel by the hindsight of later-occurring events. Rather, counsel's performance should be gauged in light of the information reasonably available to him during the course of his representation. The court finds no reasonable basis for the petitioner's assertion that if only counsel had spoken with Wallace prior to the trial he would have altered his trial CT Page 252-M testimony. For the reasons stated, the petition is dismissed.
Bishop, J.